State v. Williams et al.

STATE OF MISSOURI, Respondent, *v.* CHARLES F. WILLIAMS AND JOHN HOWARD, Appellants.

*Crimes—Larceny.*—If a bailee obtain possession by delivery under a pretence of hiring, but with the actual design of depriving the original owner of his property, he is guilty of the crime of larceny. If he bring the property into this State, he can be here indicted and punished. (R. C. 1855, p. 637.)

*Appeal from St. Louis Criminal Court.*

*S. Voullaire,* for respondent.

*R. L. Farnsworth,* for appellant.

The defendants say they were two soldiers, who had been in the service; Williams had been in the service about two years and two months as a recruiting officer; was a great favorite in his company; while recruiting he was delayed two or three days, and in consequence was ordered under arrest by his superior officer; resenting the indignity, he resigned. A breach of trust committed in Illinois and a conversion in Missouri, is not, nor can it be a felony in Missouri. The State of Missouri cannot create crimes, or laws making acts criminal, in the State of Illinois, or outside of its own limits. A bailment in a foreign jurisdiction, and a conversion in this State, constitute the two separate material parts of an offence, both parts of which are equally and absolutely essential and indispensable. Until you follow them to this State, you find no evidence of the crime of larceny; all the overt acts showing a felonious intent, if such there were, were done here.

No felonious intent can be established by subsequent acts or facts alone, whenever that is the naked question. (People v. Anderson, 14 John. 295–6.) There is no better settled rule of law than that all crimes are strictly local. In the language of the books, "All crimes are local." In other words, the prosecution of them can only be carried on in the county of their commission. A grand jury cannot inquire concerning them except in such county; and if a county is

divided, a criminal act, done before its division in the part which is created a new county, must be prosecuted in the new. The offence is against the State; the trial in the new county. (Bish. Crim. L., § 552; 17 authorities quoted.)

"There are some crimes requiring for their constitution the concurrence of two or more separate intents. Thus in larceny there must be, 1. An intent to trespass on another's personal property; 2. This not alone being sufficient, there must be added the further intent to deprive the owner of his ownership therein." (Bish. Crim. L., § 251.) "The first intent to trespass on another's property here is wanting, for the persons who are defendants obtained possession as bailees in the State of Illinois of the horse alleged to be stolen, and bailees under contract cannot become guilty of larceny of goods while the relation subsists, because they have possession of the goods in distinction from a custody." (2 Bish. Crim. L., § 729.) Then the second and further intent essential and indispensable to constitute the offence happened in another State; being in this State, and hence as there could be no larceny in this State while it was only a bailment, nor until actual conversion, there was no complete larceny committed until the conversion in this State. We think we have this precise principle adjudicated and settled by the authorities.

The defendants were not charged in the indictment specially as bailees, so they are not liable under any statute of this State concerning larceny or embezzlement by bailees, for it is expressly decided that such bailees must be charged specially as such; (Hammond v. The State, 5 Mo. 260;) so are all the precedents. Whar. Prec. §§ 468–69, and these decisions are not in conflict with Norton v. The State, 4 Mo. 460.

Bay, Judge, delivered the opinion of the court.

At the July term, 1864, of the St. Louis Criminal Court the defendants were indicted for grand larceny, and upon conviction sentenced to the penitentiary for the term of seven

years.   Upon the trial it was shown that on the 9th of June, 1864, defendants put up at a hotel in Carlisle, Illinois, kept by one Truesdale; that Truesdale kept in connection with the hotel a livery stable, and defendants applied to him to hire a horse and buggy, alleging that they wanted to go to Greenville, about twenty miles north of Carlisle, and would return next day.   Truesdale furnished the horse and buggy and  defendants left about one o'clock P. M., and  instead of going to Greenville went to St. Louis, driving all night and reaching St. Louis early next morning.   Within a few hours after their arrival in St. Louis, they sold the horse and buggy for eighty dollars.   It was also in proof that the horse had the appearance of having been driven very hard.   They stated to the purchaser that the property belonged to them, and that they were from Missouri.

Williams introduced evidence of good character, and from the statement of his own witnesses it appeared that his real name was George D. Caton, Williams being an assumed name.   The other defendant also passed under an assumed name.  It is insisted by the counsel for the defendants, that the evidence does not disclose a case of larceny, but simply a trespass or breach of trust; that defendants obtained the property in Illinois as bailees, and that the relation of bailee subsisted until the sale in St. Louis, and so subsisting, the offence was not completed in Illinois.

It is well settled that larceny may be  committed of goods obtained from the owner by delivery, if it be done *animo furandi*.   In Pear's case, 2 East's P. C. 685, it was held that the hiring a horse on pretence of taking a journey, but in truth with intent to steal it, and evidencing such felonious intent by selling the horse, was larceny.

In Spencer's case (Lew. C. C. 197) the prisoner went to the house of the prosecutor and asked him if he let horses out to hire, and if he could have one to go to Stockport, a distance of about seven miles.   Prosecutor let him have a mare, and prisoner mounted her and rode away, but in a different direction from Stockport, and the next day offered the

mare for sale, alleging that she belonged to him. Bayley, J., charged the jury that if a person gets possession of a horse by hiring, meaning at the time not to use it for the purpose for which he states he hired it, but to endeavor to make it his own, he is guilty of stealing. "In these cases (said the learned judge) the guilt or innocence of the party depends upon what passed in his mind at the time, and this is to be inferred from circumstances; if you find, that, instead of going to the place where he stated he was going, he went elsewhere, it raises a presumption that he meant to deprive the original possessor of the horse."

The doctrine of those cases has been fully recognized by our own courts. We do not contend that a bailee who obtains possession without a fraudulent intent, can be charged with larceny by reason of subsequent conversion to his own use; but we hold that if he obtains possession by delivery under a pretence of hiring, but with the actual design of depriving the owner of his property, he is guilty of the crime of stealing.

The question of intention is a question of fact to be deter mined by the jury from the circumstances surrounding the transaction, and in the case at bar the question was submitted to the jury in the 3d and 6th instructions given by the court. The jury found against the defendants, and we are at a loss to perceive how they could have found otherwise; for, in our judgment, it is clear that the larceny was complete in Illinois, and the fact of selling the property in St. Louis only furnished additional evidence of the fraudulent intention of the parties in the original taking. It is stated in the brief of defendants' counsel, that the facts given in evidence were not controverted by defendants, and as these facts established an undoubted case of larceny, we see no necessity for criticising the action of the court below in refusing to give the instructions asked by defendants. Whether the crime of larceny committed in one State can be trans_planted with the goods into another State, so as to become an offence against and punishable in the latter State, is a

mooted question, and has given rise to many conflicting opinions; but no such question can arise in this case, for it is expressly authorized by the 3d sec. of the 9th art. of our Act relating to crimes and punishments. (R. C. 1855, p. 637.)

The other judges concurring, the judgment of the Criminal Court will be affirmed.