A. MOORE BERRY, Receiver, v. HORACE E. ROOD et al., Appellants.

Division One, February 26, 1908.

1. **APPEAL: Equity Case: All Evidence.** In an equity case it devolves upon appellant to incorporate in his bill of exceptions all the evidence that was heard at the trial; but that rule is complied with by calls in the bill for the evidence alleged to be omitted. For instance, where evidence taken before a referee was returned into court with the report, and the bill calls for the report and evidence by the words, "Here the clerk will copy said referee's report and evidence," the judgment will not be affirmed because that evidence and report were not copied into the bill.

2. ———: ———: ———: Abstract. And where appellant's abstract does not contain that report and evidence, the judgment will not be affirmed because of a defective abstract, because the statutes and rules of court require respondent, when he is not satisfied with appellant's abstract, to make one of his own, and then the matter is adjusted by a taxation of costs.

3. **REFERENCE: Finding of Fact: No Exception.** Where the referee makes a finding of fact, and no exception is filed to his report in the trial court as to that finding, it is not for review in the appellate court—on the theory that the trial court is not chargeable with an error it was not asked to correct.

4. ———: ———: ———: Appeal: New Trial: Res Adjudicata. And where no exceptions were taken to the referee's finding of facts, but only to his conclusions of law, and these exceptions the trial court approved, and on appeal by plaintiff the trial court's judgment thereon is disapproved and the cause remanded "with directions to proceed to adjust the rights of the parties in accordance with the law as herein expressed," the defendants were not entitled to a trial *de novo*. Having submitted the case for judgment on the facts found, without exception thereto, they are bound thereto and the facts as to them are *res adjudicata*.

5. **SUBSTITUTED PARTIES: Assignee: Re-assignment: No Order of Court.** In a suit pending in which McMaster, as assignee of a jewelry company, was plaintiff, and a certain onyx company, a corporation, was defendant, Berry was appointed receiver of the onyx company and directed to wind up its affairs and to bring suit against the stockholders to collect its unpaid capital, for the benefit of its creditors. After McMaster began suit he made a re-assignment back to the jewelry company, and the record does not show that the jewelry company by order of court was substituted as plaintiff in the cause, but it does show that after the re-assignment the jewelry company came into court and filed an amended petition reciting the fact of re-assignment and assumed the position of plaintiff and was so recognized by the court. *Held*, that there should have been an order of court entered of record authorizing such substitution, but the omission was not fatal to the further proceedings, and, besides, if there was any merit in the cause it should have been made in the trial court on the first trial and brought to the notice of the Supreme Court on the former appeal.

6. **COSTS.**   Costs in a lawsuit do not mean attorney's fees.

7. **CORPORATION: Unpaid Stock: Assessment for Receiver's and Attorney's Fees.** Where a receiver has been appointed, the amount of his compensation and the fees to be allowed to his

attorneys should be determined in that suit; and until that is done, it cannot be determined in a suit wherein the receiver has been directed to bring suit against the stockholders of the insolvent corporation to collect from them, for the benefit of its creditors, the unpaid amount of the stock issued as paid-up, that the stockholders are not liable for receiver's and attorney's fees.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan*, Judge.

REVERSED AND REMANDED.

*Dawson & Garvin* for appellants.

(1) When this case was here on the former appeal it was reversed and remanded for a new trial, and not with directions to enter any particular judgment. State ex rel. v. St. Louis Circuit Court, 41 Mo. 574; State v. Newkirk, 49 Mo. 474; Updike v. Park, 11 Ill. App. 357; City v. Bogardus, 188 Ill. 74; Dunsmore v. Rouse, 211 Ill. 317; Hawkins v. Railroad, 99 Fed. 322. (2) And the action of the circuit court in sustaining plaintiff's motion for judgment and entering a decree thereon against defendants was erroneous. Patterson v. Patterson, 200 Mo. 335; State ex rel. v. Jarrott, 183 Mo. 204; Smith v. Paris, 70 Mo. 621; Lins v. Lenhart, 127 Mo. 280; Dalrymple v. Craig, 149 Mo. 357; Courtney v. Blackwell, 150 Mo. 267; Hoeller v. Haffner, 155 Mo. 597; State ex rel. v. St. Louis Circuit Court, 41 Mo. 574. (3) Defendants in this case are not liable for allowances for the compensation of receiver and his counsel. Such allowances being costs of administration of the estate of the Ozark Onyx Company must be made, if they are ever made, in the case of McMaster, assignee of the Providence Jewelry Company v. Ozark Onyx Company, wherein the receiver was appointed, and be paid out of such assets as he may have in his hands, or they may be taxed as costs in that case. The effect of the decree

.was to require defendants to pay plaintiff's attorney's fees in this case, which is contrary to the law of Missouri. Scovell v. Thyer, 105 U. S. 143; Hill v. Atoka Mining Co., 124 Mo. 166; Richmond v. Irons, 121 U. S. 66; St. Louis v. Meintz, 107 Mo. 615; Albers v. Merchants Exchange, 138 Mo. 160.

*Lee W. Grant, P. R. Flitcraft* and *W. B. Homer* for respondent.

(1) "All the questions presented by the record on this appeal up to the time of the decision of the court upon the former appeal, or which might have been put in issue, were passed on in the opinion then delivered, and have become *res adjudicata*. On the former appeal the judgment was reversed and the case remanded with specific directions, and under such circumstances the mandate must be strictly pursued, all matters included being *res adjudicata* and cannot be reopened." Bank v. Taylor, 62 Mo. 338; Bridge Co. v. Stone, 194 Mo. 184; Hunt v. Railroad, 184 U. S. 91; Chouteau v. Allen, 74 Mo. 56; Shroyer v. Nickell, 67 Mo. 589; Hurck v. Erskine, 50 Mo. 116; Stump v. Hornback, 109 Mo. 277; Treadway v. Johnson, 39 Mo. App. 136. (2) When a cause is reversed and remanded with directions, the trial court must proceed to enter the judgment indicated by the appellate court; nor is it necessary for the appellate court to give explicit directions regarding the judgment, but the trial court must examine the mandate and the opinion and the issues made by the pleadings, which have been adjudicated. Lackland v. Smith, 5 Mo. App. 153, 579, 75 Mo. 307; State ex rel. v. Edwards, 144 Mo. 467; Fanning v. Doan, 146 Mo. 98; Gamble v. Gibson, 10 Mo. App. 327; Supervisor v. Kennicott, 94 U. S. 498; Riley v. Sherwood, 155 Mo. 37; State ex rel. v. Given, 75 Mo. 516; Pickle Stone Co. v. Wall, 108 Mo. App. 495; Barkhoefer v. Barkhoefer, 93 Mo. App. 373. (3) A

receiver, who is an officer of the court, is entitled to such allowances as the court may make out of the assets of the estate and unpaid subscriptions of the insolvent corporation are assets. Greeley v. Bank, 103 Mo. 212; Banking Co. v. Mfg. Co., 168 Mo. 646. A receiver appointed by the Comptroller of the Currency, under the National Banking Act, is entitled to recover from the stockholders, on account of their subscriptions to the capital stock of the corporation, not only enough to pay the debts of the bank, but also all costs and expenses necessarily incurred by him in the performance of his duties. Richmond v. Irons, 121 U. S. 65. A receiver appointed by a court of equity, under its ordinary powers, has the same powers and rights to proceed against stockholders as a receiver appointed by the Comptroller of the Currency. King v. Pomeroy, 121 Fed. 287. An assignee in bankruptcy or insolvency has the right to recover against the stockholders on account of unpaid stock, the amount sufficient to pay not only the debts of the concern, but also attorney's fees, in making collection of the assessment. Sanger v. Upton, Assignee, 91 U. S. 62; Webster v. Upton, Assignee, 91 U. S. 65; Johnson, Trustee v. Allis, 71 Conn. 219.

VALLIANT, P. J.—In a suit then pending in the St. Louis Circuit Court in which F. J. McMaster, assignee, etc., was plaintiff, and the Ozark Onyx Company, a corporation, was defendant, A. Moore Berry, the plaintiff in this suit, was appointed receiver to collect the assets and wind up the affairs of the corporation which was in that suit adjudged to be insolvent. Among orders made in that suit was one directing the receiver to ascertain who were creditors and how much was owing each and to bring suit against the stockholders of the corporation to collect the balances, if any, due on their stock subscriptions to the extent of a sufficient

amount to pay the debts and expenses of the proceeding. In obedience to that order the receiver instituted this suit; the defendants in this suit were the officers and stockholders of the corporation.

This is the second appeal in this case. The proceedings in this court on the first appeal are reported in 168 Mo. 316, to which we now refer for a more complete statement of the issues and facts than will be herein given. [Berry v. Rood, 168 Mo. 316.]

Reference to that report will show that when this cause came on for trial in the circuit court it was sent to a referee to try all the issues. A lengthy trial was had before the referee, who at its conclusion made a report to the court in writing and with the report filed in court a record of all the evidence taken at the trial.

By the referee's report it appeared that the defendants, as incorporators and subscribers to the stock, launched the corporation on the business community with an ostensible full paid capital stock of $300,000, whereas in truth the stock was not paid for in money or money's worth, but only in property, the real value of which turned out to be inconsiderable. But the referee found that whilst that was so, yet when the defendants gave in the property they had such confidence in its prospective value that they really believed it was worth the face value of the stock and because they acted in good faith the referee held that they were not liable.

When the report came in plaintiff filed exceptions to it, both as to the findings of fact (chiefly to the findings that the incorporators acted in good faith), and also to the conclusions of law on the facts found. Defendants filed no exceptions to the report. Pending the exceptions filed by the plaintiff, the court re-referred the case to the same referee with instructions to ascertain and report if the defendants as officers of the corporation acted with ordinary business judgment

and discretion in fixing the value of the property taken in payment of the stock. The referee accordingly reopened the case to try that question, and after a hearing reported to the court that defendants Rood and Leighton did not exercise reasonable care and ordinary business judgment and discretion in the matter, but that the other defendants did. To that supplemental report the plaintiff filed exceptions and the defendants Rood and Leighton filed exceptions. On final hearing the court overruled all the exceptions and rendered judgment for the defendants on the theory that although the property given in was of comparatively little value, yet they believed it to be of great value and thus acted in good faith. When the cause was here on the former appeal the main controversy was over the correctness of that theory. We reversed the judgment and held that the defendants were liable for the difference between the real value of the property given in and the face value of the stock, notwithstanding they may have believed that the property was of the value of the face of the stock. There is no necessity for repeating now what we said then on that point; we are satisfied with the views there expressed. There were some other points discussed in the opinion in the former appeal, but the main point was the one above mentioned. The opinion concluded with this sentence: "The judgment is reversed and the cause remanded to the circuit court with directions to proceed to adjust the rights of the parties in accordance with the law as herein expressed." In the judgment rendered in this court, after words reversing the judgment of the circuit court, was this clause: "It is further considered and adjudged by the court that the said cause be remanded to the circuit court of the city of St. Louis for further proceedings to be had therein in conformity with the opinion of the court herein delivered."

The plaintiff interpreted that opinion and judg-

ment to mean a direction to the circuit court to enter judgment in his favor against the defendants respectively in proportion to their stock holdings in sums sufficient to pay the debts of the corporation as set out in the opinion and expenses of the receivership, including his own compensation and compensation for his attorneys, and he filed a motion in court asking such judgment.

The defendants on the contrary interpreted the opinion and judgment of this court to mean that the judgment of the circuit court was reversed and the cause remanded to be tried anew in conformity to the law as declared in the opinion. The trial court sustained the plaintiff's motion and ruled that the defendants would be allowed to introduce evidence only going to show that since the former trial matters have occurred which may lessen their liability as, for example, payment of creditors. Defendants duly excepted.

On the hearing of the motion the testimony of several expert witnesses was adduced on the part of the plaintiff to the effect that the services of the attorneys in the case were worth $5,000, and of the receiver himself from $1,000 to $1,500. There was evidence also of expenses paid out in various amounts aggregating $59.75, all of which went in over the objections of defendants and exceptions were duly saved.

Plaintiff also read in evidence the report of the referee in the former trial and the articles of association of the Ozark Onyx Company.

Defendant read in evidence the pleadings and certain of the proceedings in the original suit of McMaster v. The Ozark Onyx Company in which the receiver was appointed and in which the receiver was ordered to bring this suit. Defendants also introduced proof to show that since the former trial the debts due the National Bank of the Republic and the Huttig Sash and Door Company had been paid.

On the evidence adduced the court found that there were debts due creditors of the corporation, in various amounts which with interest amounted then in all to $246.78, that certain expenses had been incurred, printing briefs, stenographer, copies of records, etc., to the amount of $59.75, and that to compensate the receiver and his attorneys $6,000 would be needed; whereupon the court rendered judgment against the defendants each in a sum in proportion to his stockholding, the whole aggregating a sum sufficient to pay the debts, the expenses and compensation for the receiver and his attorneys as above mentioned. It was provided in the decree that if the assessment made against any one of the defendants could not be collected the deficiency was to be levied against the others in proportion, and also that if the aggregate of the sums collected should be more than would be needed to pay all the debts and expenses and compensation to the receiver and his attorneys, as the court in the final decree in the suit of McMaster v. the corporation might adjudge, the surplus was to be returned in due proportion to the defendants. The defendants preserved their exceptions and have duly appealed from that judgment.

I. Defendants' first suggestion is that, in the light of recent decisions of this court, the judgment of the trial court in the former appeal should have been affirmed because the appellant did not bring up all the evidence adduced at the trial, and in support of this suggestion defendants refer to State ex rel v. Jarrott, 183 Mo. 204; Patterson v. Patterson, 200 Mo. 335; Pitts v. Pitts, 201 Mo. 356; and Guinan v. Donnell, 201 Mo. 173.

The law as laid down in those cases is that in an equity case it devolves on the appellant, who seeks to reverse the judgment, to incorporate into his bill of exceptions all the evidence that was heard at the

trial and that on his failing to do so the appellate court will not reverse the judgment if the pleadings will sustain it, even if it appears to be erroneous in the light of the facts found by the chancellor. In the Jarrott case we said: "The opposite party has obtained rights by this decree. He has a right to have the whole evidence upon which his decree is based before this court before it is reversed. He may be able from that evidence to show that the circuit court's findings were erroneous, and the decree right notwithstanding such findings." And in the Patterson case, replying to the suggestion that if the defendant was dissatisfied with the findings he should have excepted and filed his bill of exceptions embodying therein all the evidence, the court said: "That suggestion would impose on the defendant in whose favor the judgment was rendered the burden that the law imposes on the plaintiff who is the appellant. But the defendant could not bring the evidence here, even if he were willing to bear the burden, because the judgment was wholly in his favor and he cannot appeal from it. If he had filed a bill of exceptions it would have lain in the circuit court and could never have been brought to us. A party brings up his bill of exceptions only when he takes an appeal or sues out a writ of error." That is the doctrine also in the Pitts and the Guinan cases, above cited. But the essential difference between those cases and the case at bar is that in this case the plaintiff, the appellant in the former appeal, did embody in his bill of exceptions all the evidence. Where a bill of exceptions calls for the insertion of a document on file in the case as, "Here the clerk will copy it," or other apt words, the document called for is a part of the bill of exceptions. In this case the evidence taken before the referee was returned into court with the report, and the bill of exceptions called for the report and the evidence. But when the appellant came to make out his

abstract he did not put any of the evidence in it, and the defendants moved the court to affirm the judgment or dismiss the appeal, not because the evidence was not in the bill of exceptions, but because of the defect in the abstract. The difference between the condition of the records in the cases cited and that of this record is that in those cases the evidence had not been preserved so as to be available to the respondents, but here it was preserved and was at the service of these defendants if they had desired to avail themselves of it.

But it was said the abstract was insufficient. Section 813, Revised Statutes 1899, and rules 11 and 12 of this court provide that if the respondent is dissatisfied with the abstract filed by appellant he may file an abstract of his own making, and if in the end it turns out that he was justified in filing his abstract he may recover his costs. There is perhaps an element of unfairness in the law that imposes on the respondent a burden that justly belongs to appellant, but it is the law as prescribed by statute and as regulated by rules of court, and it is in the spirit of our code practice. It is in the same questionable light as to fairness as is the law that requires pleadings to be construed liberally instead of strictly as was the rule at common law; if a petition is vague and shadowy in its meaning, the law seems to say to the defendant, It is your duty to point out either by demurrer or motion to make more definite and certain wherein the plaintiff's pleading is defective. That practice is not altogether free from the charge of unfairness, but as already said it is within the spirit of our code of civil procedure and, since it has been the practice so long, we may presume that on the whole it has been found to work out justice.

There is another reason why these defendants have no cause to complain of the absence of the evi-

dence on the former appeal. The referee found as a · fact that the property given in to pay for the stock was of little value, that is, not near the face value of the stock. If they had desired to challenge the correctness of that finding there was one way in which to do it, and only one, that is, to file an exception to the finding and ask the court to review it in the light of the evidence on file. The fact that the ·conclusion of the referee on the law of the case was that defendants were not liable because they were not guilty of intentional fraud, did not prevent the defendants from filing exceptions to the report on the findings of facts; they had the right to ask the trial court to review those findings in the light of the evidence, and to insist that the judgment should be in their favor even though not on the ground recommended by the referee, but on the ground that the referee's finding that the property given in payment for the stock was of little value was incorrect. But these defendants filed no exception to the report; they are therefore conclusively presumed to have acquiesced in the finding. Suppose the judgment had been against them and they had appealed, could they have asked this court to weigh the evidence and reverse the finding when they had not given the trial court an opportunity of doing so? In that particular the trial of an equity case does not differ from the trial in a law suit; if the losing party in an equity case does not file a motion for a new trial or rehearing and give the trial court an opportunity to correct its own error, if error there be, he cannot ask an appellate court to do so. A party failing to file an exception to a referee's report is not entitled, as of right, to have either the trial court or the appellate court go through the evidence to see if the finding of fact was correct. Of course during the term the whole case is in the breast of the trial judge, who, even

in a law suit, may grant a new trial although no motion therefor was filed within the four days, but if the trial court refuses to grant a new trial when there has been no motion in time, the refusal is not subject to review on appeal.

We have said there was no exception filed by defendants to this report, but we have not overlooked the fact that after the report was filed the cause was re-referred for a finding on a particular question and when that supplemental report came in two of the defendants filed an exception to the finding, but that finding was on a totally immaterial point. Under the law as laid down in the former appeal it was immaterial what the parties may in fact have thought as to the value of the property or how good judgment the officers of the corporation exercised in receiving it as full pay for the stock; if the property was not worth the face value of the stock the defendants were liable for the difference.

II. We come now to a consideration of the question, were the defendants entitled to a trial *de novo* of all the issues?

We have seen that there were certain facts found by the referee at the first trial and upon those facts it was decided by this court that these defendants were liable to the extent indicated in the opinion and the cause was remanded to the circuit court with directions to proceed to adjust the rights of the parties in accordance with the law as therein laid down. We have also seen that as to the facts so found the defendants did not avail themselves of the opportunities the law afforded either in the trial court or this court to question the correctness of the findings.

In the face of the fact, as shown by the record, that all the property that the corporation had taken in payment of $300,000 of stock—land, machinery, plant and everything — was sold by the receiver under direction

of the court and brought only about $4,000, it is not
unreasonable to conclude that the defendants did not
care to try to convince the chancellor that it was really
worth $300,000. But whether they were satisfied that
the finding of the referee as to the value was correct
or whether they relied with too much confidence in the
conclusion the referee came to on the law, that is, that
as long as no actual fraud was proven they were not
liable, whatever the reason, the fact is they accepted
the finding and together with the further finding of no
fraud, they based their plea before the court for a judg-
ment in their favor. Having so submitted the case for
judgment they are bound by it and the fact as to them
is *res adjudicata.* Therefore, when the cause went
back to the circuit court the facts found in the referee's
report were not open for controversy, and the law ex-
pressed in the opinion as applicable to those facts was
to be taken by the circuit court as the law of the case.

The trial court did not err in holding that the cause
was not open for a trial *de novo.*

III. The point is made that after McMaster, as
assignee of the Providence Jewelry Company, began
the suit he made a re-assignment back to the Jewelry
company and that the record does not show that the
Jewelry Company by order of court was substituted
as plaintiff in the cause. That is so, but the record does
show that the Jewelry Company after the re-assignment
came into court and filed an amended petition reciting
the fact of the re-assignment and thereafter assumed
the position of plaintiff in the cause and was so treated
by the court. There should have been an order of
court entered on the record authorizing such substitu-
tion, but that was overlooked. We do not think, under
the circumstances of this case, the omission was fatal
to the further proceedings. Besides, if there was any
merit in the point it should have been made in the trial

court on the first trial of this cause and brought to the notice of this court on the former appeal.

IV. On the hearing of the cause on plaintiff's motion for a judgment the evidence showed that the two largest debts of the corporation had been paid since the judgment of this court on the former appeal, and there were left unpaid only a few small debts amounting in all, with interest for several years, to $246.78. Why the receiver did not pay those small debts out of what was left in his hands of the $4,000 he received as proceeds of the sale of the tangible property after paying the seven per cent dividend to the creditors does not appear, but at all events the only real contention now remaining in the case is the claim of the receiver that the stockholders are liable to him for $1,000 as compensation for his services and $5,000 as compensation for the services of his attorneys. There was expert evidence on the part of the plaintiff to the effect that $1,000 to $1,500 would be a reasonable amount to compensate the receiver for his services, and that the services of the attorneys were worth $5,000. There was also evidence that expenses for various items had been incurred by the receiver amounting to $59.75. The court seemed to take the opinions of the experts as conclusive and found that it would require $6,000 to pay the receiver and his attorneys what their services were worth. Opinion evidence is not conclusive when the trier of the fact is competent to form an opinion of his own. The judgment was that the defendants should pay, in proportion to their stock holdings, sums sufficient to pay the $246.78 debts, the $59.75 expenses, and $6,000 to create a fund out of which to pay compensation to the receiver and his attorneys.

There has been no allowance made by the court to the receiver for compensation for himself or his attorneys in the suit in which the receiver was appointed, that is, the suit of McMaster v. The Ozark Onyx Com-

pany, and the judgment in the case at bar does not undertake to make such allowance, but only to provide a fund in the hands of the receiver out of which the allowances may be paid when the court in the former suit makes them, and the decree provides that if the court should not allow that much the surplus is to be returned to the defendants.

When a receiver is rightfully appointed he is entitled to payment for his services out of the funds that come into his hands as receiver and the amount of his compensation in the first instance is to be fixed by the court which appointed him. If litigation ensues and the receiver needs the aid of an attorney he may, with leave of the court, employ one, and the receiver is entitled to an allowance out of the estate in his hands with which to pay his attorney, the court fixing the amount. It has been held that these fees and expenses when allowed by the court are entitled to be paid out of the assets in the receiver's hands before other demands. [Alderson on Receivers, p. 833.] That preference goes on the theory that the services rendered are for the benefit of the creditors or those otherwise interested in the property, and therefore payment for the same is a proper charge on their interest. In the case of an insolvent concern the receiver undertakes to collect the assets for the benefit of the creditors, and it is not unreasonable therefore that the funds collected to pay their debts should be tolled for the cost of collection. If the assets that come into the hands of the receiver are sufficient to pay all the debts in full and a surplus of assets remains the expenses of the administration may be paid out of that surplus. But the appellants raise this point: they say that if they are liable at all it is only for a sum sufficient to pay for the debts of the corporation, that they are not liable for attorney's fees or receiver's fees. It is argued that this is a suit ostensibly in the interest of the creditors, that the statute

gives them a remedy at law, section 985, Revised Statutes 1899, which remedy if these creditors had seen fit to pursue would have been pursued at their own expense as to attorneys' fees, and whilst it is not contended that the remedy given by statute deprives the equity court of its jurisdiction yet there is an analogy that should not be overlooked. If creditors sue a live corporation and levy their debts out of its tangible assets they are not allowed an additional levy to pay their attorneys, but they pay that expense out of their own recovery. The question of the liability of the stockholders for receiver's fees and attorney's fees was not decided on the former appeal, because it was not raised then and had not been decided in the trial court. The extent of the decision on the former appeal was that "the original incorporators are liable in this suit to the extent that may be necessary to pay off the debts of the concern to creditors who extended credit without knowledge of the fact that the corporation had accepted the property in payment of the stock and to the extent also of the cost of this proceeding." But costs in a law suit do not mean attorney's fees. [St. Louis v. Meintz, 107 Mo. 1. c. 615; Albers v. Merchants' Ex., 138 Mo. 1. c. 159-160.] Neither are we now deciding, nor intimating an opinion on that question, because it has not yet been decided by the trial court and is not before us for review.

Our attention is also called to what the defendants regard as an unreasonable disproportion between the amount of the debts established against the corporation, the amount of its tangible assets and the asserted expenses of the receivership. The litigation was begun by McMaster as assignee of the Providence Jewelry Company, stating in his petition that the corporation was insolvent, that it owned about $15,000 of assets, and that it owed the Providence Jewelry Company about $16,000 besides other debts. After the receiv-

er was appointed, the debts were established in a pro-
ceeding before him, in which it was found that the cor-
poration owed for principal and interest up to that
date $25,258.55, of which $19,487.49 was the amount
due the Providence Jewelry Company, leaving $5,771.06
the aggregate of the debts due other creditors. On the
former appeal it was adjudged that the Jewelry Com-
pany had no right to hold the stockholders for any part
of the debt due it; therefore, there remained of the
debts for which the stockholders were liable, accord-
ing to the record we had on the former appeal, for
principal and interest at the date of the report of the
receiver, less than $6,000. And the evidence on the
trial of the plaintiff's motion for a judgment, which
we are now reviewing, shows that whilst those credi-
tors, other than the Jewelry Company, came in and
proved up their debts before the receiver when they
were notified to do so yet they never became parties
to that suit or this, and have made no move in this liti-
gation. It also now seems that the debt next largest
to that of the Jewelry Company, to-wit, the $4,000 debt
due the Bank of the Republic, was paid after the decis-
ion in the former appeal by an endorser of the notes
who himself was one of the largest stockholders in the
corporation and who, although entitled to have a pro-
rata of the other assets of the corporation applied to
the payment of the debt, yet under the law as declared
in the former appeal was in no condition to pursue the
other stockholders. From this it would seem, as it
turned out, that at the date of the filing of the Mc-
Master suit the total amount of debts for which the
stockholders could have been held was less than $2,-
000. On this showing defendants contend that even
if they are liable to be taxed for a sum to pay the re-
ceiver and his attorneys, $1,000 for the one and $5,000
for the others are out of proportion to the bulk of the
interests involved, the responsibility assumed and the

intricacies of the litigation.   We do not say as a finding
of fact that those figures are correct, but there is suffi-
cient evidence of their correctness to entitle the defend-
ants to be heard on the question.

The case is hardly ready for a decision on the
question of whether the stockholders are liable for
receiver's fees and attorney's fees or, if so, whether
the sums now demanded are reasonable, because those
questions have not been passed on by the trial court.
The only court that can, in the first instance, pass on
the question of allowances to the receiver for himself
and his attorneys, is the court in which the suit in
which the receiver was appointed is still pending, and
even then the allowances made by that court in that
case are not binding on the stockholders, because they
are not parties to that suit.   But after the court in that
case makes allowances the receiver will be authorized
to come into the court in which this suit is pending and
ask in this suit for judgment against the stockholders
to satisfy the allowances, and then both questions that
the defendants now raise will be open.   The trial court
in this case will then have to exercise its own judgment
as to whether the defendants are liable for such fees
and if so what is a reasonable amount and from the
judgment so rendered either party may appeal.

In the judgment now before us for review the trial
court has not decided either that the defendants are
liable or that the amount claimed is just compensation;
the effect of the judgment under review is to provide
a fund of $6,000 out of which to pay the allowances if
ever they are ordered, and the surplus, if any, to be
returned to the defendants.   The course that the trial
court took in rendering that judgment is not without
precedent and under some circumstances might be
proper procedure, but in the case at bar there was no
occasion to take up the subject before the court in the

original cause had passed judgment on the question and had made or refused to make the allowances asked.

Both these are suits in equity in which the original points in litigation have been decided, and they are both held open now only for the purpose of making orders in relation to costs and expenses and to carry into effect the judgments rendered.

The judgment is reversed and the cause remanded to the circuit court with directions to proceed with the cause in conformity with the law as herein expressed. *Lamm* and *Graves, JJ.,* concur; *Woodson, J., dubitante.*