STATE OF MISSOURI, at the Relation of WILLIAM M. MORTON, JOHN C. LANDIS, III, CHARLES F. STROP, JR., and FRANCIS A. SMITH, Members of the Bar Committee of the Sixth Judicial Circuit of the State of Missouri, Relators, v. NICK T. CAVE, EWING C. BLAND and SAMUEL A. DEW, Judges of the Kansas City Court of Appeals, Respondents, No. 40591—220 S. W. (2d) 45.

Court en Banc, May 9, 1949.

74

*Donald H. Latshaw* and *Charles E. McCoy* for relators.

*Chas. H. Mayer* for respondents.

McCULLEN, SPECIAL JUDGE.—Pursuant to a writ of certiorari issued by this court, respondents as Judges of the Kansas City Court of Appeals transferred and certified to this court the record in a disbarment proceeding which originated in said court. An information was filed in said Court of Appeals by the Sixth Judicial Circuit Bar Committee, also referred to as informants, charging Richard W. Mason, a licensed and practicing attorney at law, with professional misconduct. Said court appointed Honorable Oak Hunter, a member of the Missouri Bar, as Special Commissioner to hear evidence and to report the same to the court together with his findings of fact and conclusions of law. The Commissioner, after hearing evidence presented by the parties, made a comprehensive report to the court in which he concluded that the evidence as to the misconduct of the accused attorney, referred to therein as respondent, was insufficient to justify or require any disciplinary action by the court and recommended the dismissal of the charges that had been filed against the attorney.

Informants filed exceptions to the Commissioner's Report and thereafter the cause was argued and submitted to the court by the parties. Later an opinion was handed down by the Court of Appeals in which all of the Commissioner's Report, except as to count 8 of the information, was approved. Under count 8 the court found the respondent attorney guilty and ordered that he be reprimanded and that he pay the sum of $250.00 to be applied upon the costs. See In re Mason, 203 S. W. (2d) 750.

On the same day that the opinion was adopted, June 16, 1947, the court made a separate order allowing the following items of costs:

| "Allowance to Commissioner for his services | $1100.00 |
| --- | --- |
| Commissioner's expense | 67.44 |
| Marshal of Kansas City Court of Appeals | 16.00 |
| Commissioner's Reporter | 411.00 |
| Witnesses and mileage | 16.60 |
| Total | $1611.04." |

The court on said date also rendered a separate judgment against the respondent attorney for costs in the sum of $250.00 and reprimanded him for unprofessional conduct. In said judgment the court assessed the remainder of the costs in the sum of $1361.04 against informants.

Informants did not file a motion for rehearing, but on June 27, 1947, filed a motion which was designated "Motion to Retax Costs or Certify Question to Supreme Court of Missouri." The motion prayed for an order to reduce the Commissioner's allowance and to retax all the costs against the respondent attorney and further prayed that "in the event the court declines so to do, then that the question of retaxing costs in this case be forthwith certified to the Supreme Court."

On June 30, 1947, the motion to retax costs was overruled by the court and thereafter informants filed their petition for certiorari in the Supreme Court alleging, in their suggestions in support thereof, that the question presented is "whether or not the costs of this disbarment proceeding may be assessed against the Bar Committee of the Sixth Judicial Circuit of the State of Missouri, Informant herein, while acting in good faith in performance of its duty . . . ," in view of the finding of the court adjudging the accused attorney guilty of unprofessional conduct. The petition of informants-relators for said writ of certiorari alleged that the "question aforesaid is of transcendent general public interest and importance," and prayed this court to require the Court of Appeals to certify to this court the record of the case and that this court quash said judgment. The "question aforesaid," above referred to, meant, of course, the question of costs.

Suggestions filed by informants in support of their petition for the writ of certiorari were devoted solely to the matter of having the

costs retaxed and concluded as follows: "The calculated importance of the question of costs should not be measured by the possible effect upon the accused attorney, but as a question of prime and vital importance to the general public, inevitably recurrent." All the records of the proceedings in the Court of Appeals were duly certified to this court along with the briefs that had been filed by the parties in said court, in which briefs the whole case was discussed. Prior to the first hearing in this court, informants did not file a new brief here but argued the whole case as well as the motion to retax costs. No argument on behalf of respondent judges was made at said first hearing in this court, but they filed a brief herein which was confined to opposition to the motion to retax the costs. Thereafter, the court failed to reach a decision and thereupon the cause was reset and the writer was appointed as Special Judge to sit with the court, after which the cause was argued and submitted by both sides, the court permitting discussion on the whole case as well as on the motion to retax costs, both sides having filed briefs herein.

The first question to be decided is whether we should render a decision anew on the merits of the entire case or confine our discussion and decision to the motion to retax the costs.

Both sides in this controversy have cited the case of In re Conner, 357 Mo. 270, 207 S. W. (2d) 492, recently decided by this court. We believe that when that case is read with care it will be found not to support the contentions of relators (informants) herein.

Counsel for relators strongly urge that when a case is transferred to the Supreme Court upon application for certiorari to review the decision of a Court of Appeals, the case in its entirety should be heard upon its merits. Fifteen different cases decided by this court at various times in the past are cited in support of this contention by relators, but we believe it would serve no useful purpose to review such cases in detail here. None of them deals with a situation similar to that in the case at bar.

We have examined each and every one of said cases and find that none of them involved the question before us in the case at bar, namely, whether or not this court has authority to review on transfer or certiorari a decision of a Court of Appeals where the party complaining of the decision of the Court of Appeals failed to file in said court a motion for rehearing and to transfer to the Supreme Court the matter involved, as required by this court's rules. Such cases are, therefore, not in point herein.

Strongly opposing relators' view, counsel for respondents contends that this court cannot consider this case on the merits without violating the court's own rules. In this connection it is urged on behalf of respondents that since no motion for rehearing and no motion to transfer the case to the Supreme Court was filed in the Court of Appeals, the writ of certiorari should be quashed.

The above contentions require a careful consideration of the rules adopted and promulgated by this court. Sec. 5 of Article V of the Constitution provides: "The supreme court may establish rules of practice and procedure for all courts." Further authority is given to this court by Section 10, Article V of the Constitution, which, among other things, provides: "The supreme court may finally determine all causes coming to it from any court of appeals, whether by certification, transfer or certiorari, the same as on original appeal." Supreme Court Rule 2.06 made pursuant to said constitutional authority provides: "Any case coming to the Supreme Court after having been briefed on the merits in, and decided by, a court of appeals will be finally determined by the Supreme Court the same as on original appeal, whether such case comes to it by certification, transfer or certiorari." The very first part of said Rule 2.06 provides: "No case shall be transferred by order of the Supreme Court from a Court of Appeals unless a motion for rehearing has been filed and overruled in the Court of Appeals and unless a motion for such transfer has been made to the Court of Appeals within the time for filing a motion for rehearing and denied by it, and unless an application for transfer is filed in the Supreme Court within thirty days after the denial of the motion for rehearing and motion for transfer by the Court of Appeals."

 It will be noted that Section 10 of Article V of the Constitution and Rule 2.06 both provide that the cases referred to therein shall be decided by the Supreme Court "the same as on original appeal." They do not provide for hearings de novo of entire cases in the Supreme Court. We must, therefore, be governed in this case by the procedure that governs "on original appeal." When a case is brought to this court "on original appeal" this court, in determining the matters for decision, looks to the record brought before it in accordance with the rules governing appellate procedure. Although the court is authorized to examine the whole record, if that be necessary to a final decision, and the whole record has been properly brought here, yet if no motion for new trial was filed below, then the only thing this court will examine is that part of the record called the record proper. Although Supreme Court Rule 1.04 abolishes the distinction between the "record proper" and the "bill of exceptions" in the preparation of the transcript of the record, it does not do away with a motion for a new trial as a prerequisite to appellate review of matters outside the record proper. Futhermore, even if a motion for new trial was filed below, this court will not consider questions not presented in such motion to the trial court because of Supreme Court Rule 3.23 which provides, "Allegations of error, in order to be preserved for appellate review, *must* be presented to the trial court in a motion for a new trial." (Emphasis ours). Therefore, in this case we must determine only those matters as to which the rules governing appellate procedure

have been complied with. This result necessarily follows because both Section 10, Article V of the Constitution, and Supreme Court Rule 2.06, provide that this court will determine cases coming to it from Courts of Appeals by certification, transfer or certiorari, "the same as on original appeal." There must be compliance with the rules, otherwise procedure will become chaotic.

A failure by this court to require compliance with its own rules would mean that this court would be rendering final decisions on questions without giving the lower court an opportunity to review its own actions and correct its own errors, if any. Such procedure would be contrary to the time honored fundamental principle of appellate procedure, which has been long and firmly established in this state by this court's decisions, namely, that a trial court must be given an opportunity to review and correct its own errors before the aid of an appellate court can justly be invoked. The above fundamental principle applies in both equity and law cases. Aetna Ins. Co. et al. v. O'Malley, 343 Mo. 1232, 124 S. W. (2d) 1164; Berry v. Rood, 209 Mo. 662, 108 S. W. 22; Olson v. Olson, Mo. App., 184 S. W. (2d) 768.

Supreme Court Rule 5.11 which deals expressly with proceedings brought for disciplinary purposes against members of the Bar provides: "In all cases authorized to be filed under this rule the Informants or Respondent may except to the decision of the Trial Court and may thereafter, within thirty days from the date the exceptions are overruled by the Trial Court, seek a review of such decision by this Court by the institution of such appropriate proceedings as may be authorized under the Constitution and laws of Missouri." This court has held many times that a disbarment proceeding is sui generis, but it will be noted that a disbarment proceeding is referred to in Rule 5.11 as a "case." It is also a "case" within the meaning of Rule 2.06. In the case now before us, it is conceded that no motion for rehearing on the entire case or to transfer the entire case on the merits was filed in the Court of Appeals, and it is also conceded that no exceptions to the decision of the Court of Appeals on the merits was filed by informants as provided for by Rule 5.11. In the [50] Conner case this court, referring to Rule 5.11, said: "The right to file exceptions was given as the predicate to the right of review." In re Conner, Mo. Sup. 207 S. W. (2d) l.c. 496. It is true this court did say in said case that, "permission to practice law and disbarment from further practice is within the Supreme Court's exclusive final cognizance." In re Conner, supra. However, it will be noted that the court also said: *"But we do not mean that when a disbarment proceeding is brought here for review that any of the prescribed rules of practice in this Court disappear."* In re Conner, supra, l.c. 497 (Emphasis ours).

It must be remembered that the pivotal question in the Conner case was whether the Bar Committee as informants had a right to "appeal," and whether or not this court had the right to consider the mer-

its of the contention of informants therein that the ninety day suspension from practice of the accused attorney was inadequate. That case did not involve the question before us in the case at bar, namely, the failure of informants to file the proper motions in the lower court to give that court an opportunity to correct alleged errors in its decision before applying to this court for review of the lower court's action. The holding in the Conner case was that it is the duty of this court to hear and determine any disbarment proceeding originating in any court of the state, but that very holding carefully provided that such case must come to this court in accordance with the rules governing the procedure and in such manner as to give notice and opportunity to the parties to present the entire case to this court upon the merits if that kind of review is sought.

It is to be noted that this court in holding in the Conner case that there could be no limitation upon its powers to govern the conduct of its officers, carefully followed that holding with the specific language: "so long, of course, as due process shall have been accorded." In re Conner, 357 Mo. 270, 207 S. W. (2d) 495. It is true that this court's power with respect to hearing and finally determining disbarment proceedings cannot be restricted by any other tribunal under our present Constitution. However, the court may do what it has done, namely, use its rule making power to adopt rules to provide for the manner in which its power and authority shall be invoked. When this court makes and enforces such a rule as Rule 2.06, it does not thereby permit any other tribunal or any party to limit or restrict its power or authority, it simply names the conditions under which its power and authority to act may be invoked.

The Supreme Court itself, having the rule making power, has laid down the rules that prescribe the conditions which constitute the irreducible prerequisite to a transfer of a case from a Court of Appeals. The language of Rule 2.06 is clear, unequivocal and specific: "No case shall be transferred by order of the Supreme Court from a Court of Appeals unless a motion for rehearing has been filed and overruled in the Court of Appeals and unless a motion for such transfer has been made to the Court of Appeals . . . . and denied by it, . . . ." To attempt to render a decision on the merits of the entire cause on the record herein would be not only in violation of Rule 2.06 but also in violation of Rule 1.19. That rule provides for motions for rehearing in a Court of Appeals and requires that such motion "shall briefly and distinctly state the grounds upon which a rehearing is sought." It further requires that such motion "must be filed within fifteen days after the opinion of the court shall be filed and the motion and suggestions must be served on the adverse party or his attorney within said time." Neither a motion for rehearing nor to transfer the entire case on the merits was filed in the case at bar. It is true Supreme Court Rule 3.27 provides that this court may consider plain

errors affecting substantial rights even though they were not preserved for review "when the court deems that manifest injustice or miscarriage of justice has resulted therefrom," but we see nothing to warrant our invoking that extraordinary discretion in this case.

Strong though the temptation may be for us to go into the merits of this entire case because of the nature of the proceeding, involving as it does the integrity of an ▮ officer of the court, we feel that we should, nevertheless, set an example by adhering to the court's rules in this case the same as they are adhered to in every other kind of case. The rules are fair and reasonable. They are based on sound and time tried principles of justice. Compliance with them is neither technical nor difficult. A proper respect for our own rules compels us to hold, and we do hold, that we cannot properly pass upon the merits of this entire case.

▮ It will be recalled that the Court of Appeals entered a separate judgment on the costs, and that relators as informants did file a motion to retax the costs which was in fact and in law a motion for rehearing on the costs phase of the matter. That motion was overruled after which informants, as relators, applied to this court for certiorari limiting their application solely to the question of costs. We believe that the matter of costs, therefore, was a separable "case" as to which this court had authority to issue its writ of certiorari.

A "case" has been defined as "A general term for an action, cause, suit or controversy, at law or in equity. A question contested before a court of justice." Black's Dictionary of Law. There are many other definitions, of course, but we believe the above is as simple and, at the same time, as comprehensive as any that may be found. The matter of costs herein was certainly "A question contested before a court of justice."

Informants did comply with the rules with respect to said after judgment order on the costs. They specifically objected to the court's decision on the costs and requested the court to change its rulings thereon. They included in said motion a request for transfer of the question of costs to the Supreme Court in the event the Court of Appeals declined to retax the costs. An after judgment order is appealable under the new Civil Code, Section 126, Laws Mo. 1943, page 390, Mo. R. S. A. Section 847.126. Long before the new Civil Code was adopted it was held that ordinarily a judgment for costs was not a final judgment from which an appeal could be taken, but if the cause was tried and final judgment entered and further proceedings occurred after the trial and judgment (as occurred herein) an order made on a motion to retax costs was appealable. Shed v. Kansas City, St. Joseph & Council Bluffs Railroad Co., 67 Mo. 687; Herson v. The C. and A. Railroad Co., 18 Mo. App. 439; Bosley v. Parle, 35 Mo. 232.

It is true that no appeal lies to this court from a Court of Appeals, but an order made on a motion to retax costs is such an order as to give this court authority to transfer the matter of costs to this court for review, on proper application, if this court regards the question as one of general interest and importance. See Article V, Section 10, Constitution. This court is authorized to transfer such an order on costs on proper application also by virtue of Section 4 of Article V of the Constitution, which gives this court "a general superintending control over all inferior courts and tribunals." We rule that although we are not authorized to review the merits of the entire cause herein, for the reasons stated, we do have authority to review the decision and order on the costs. ·

Coming now to the assessment of the costs made by the Court of Appeals, we must look to Supreme Court Rule 5.10. That rule, which covers the trial and disposition of causes in disbarment proceedings provides among other things: "Costs shall be taxed as the Court, in its discretion, may order. . . ."* There can be no doubt that the discretion to be exercised by the court in which the cause is tried is subject to review by this court provided the reviewing power of this court is invoked in accordance with the rules made for that purpose. This is especially true with respect to costs assessed against the "Bar Fund" because that fund is derived from dues paid by the lawyers of the state. By virtue of the provisions of Rule 6 and its various subdivisions, the Supreme Court through its Clerk has reserved supervision of that fund. In order to determine whether the costs herein were properly assessed, it is necessary briefly to review the nature of the case. Anyone interested in a detailed statement of the facts may read the [52] opinion of the Court of Appeals, In re Mason, 203 S. W. (2d) 750.

The information containing the charges against the respondent attorney was in eight counts. The first count was general in nature, charging the respondent attorney with professional misconduct in wilfully, knowingly and unlawfully acting against the interests of the public by his conduct in relation to certain matters in his practice as an attorney.

Count 2 charged that the respondent attorney as administrator of an estate filed ten cases in a Justice Court praying judgment for the balance due on accounts owed the estate and for judgment for attorney fees. The defense of the attorney to this count was that his stenographer inserted claims for attorney fees without his knowledge and that he did not actually collect such fees.

. Counts 3 and 4 of the information charged that the respondent attorney brought many suits in a Justice Court and illegally attempted to collect, and in some cases actually collected attorney fees. These suits were based upon printed order forms charging the debtors with "collection expenses." At that time there were no appellate decisions

in this state holding that the term "collection expenses" does not authorize the collection of attorney's fees. Since that time it has been held in Prudential Ins. Co. of America v. Goldsmith, Mo. App., 192 S. W. (2d) 1, an opinion by the Kansas City Court of Appeals, that the term "costs" or "expenses" as used in a statute or in contractual provisions for the payment of "expenses" does not ordinarily include attorney fees. The report of the Special Commissioner and the opinion of the Kansas City Court of Appeals in the case at bar cite cases from other jurisdictions holding that terms similar to that contained in the orders involved herein may include attorney fees.

Counts 5, 6 and 7 charged the respondent attorney with filing many suits on open accounts in which he prayed judgment for attorney fees in addition to the balance due the petitioner in whose behalf the suits were brought. In some cases the attorney fees prayed for exceeded the debt sued for. Some judgments were rendered for attorney fees and some part thereof was actually collected by the respondent attorney. In his report the Commissioner stated that the evidence as to these charges was similar to that introduced with respect to Counts 2 and 3. The respondent attorney contended that the including of prayers for attorney fees in said suits was the work of his stenographer.

Count 8 of the information charged the respondent attorney with writing a letter to one William S. Moritz in which the attorney solicited employment to prosecute a claim for overtime pay against Moritz's former employer and having stated in said letter: "We handle these matters on a contingent basis of 50% on all sums collected whether by suit, compromise or otherwise and we pay all expenses and costs of whatever kind for the prosecution of the matter."

The respondent attorney admitted writing the letter referred to in count 8 and gave testimony in which he sought to explain the letter in a way to show that it was not unethical. In this connection he testified: "At that time I knew no suit would be necessary—at the time I wrote the letter—and I did not intend the word 'costs' to mean court costs. I might say in this way that it was more of an inadvertence on my part when I mentioned that. That isn't what I intended." Notwithstanding the respondent attorney's explanation of this letter-writing episode, the Court of Appeals found him guilty of unethical conduct on said Count 8 in soliciting legal business and agreeing to pay the costs of suit.

The record herein shows that the Special Commissioner filed with his report a detailed statement of expenses and requested an allowance of $2000.00 for his services. The Court of Appeals reduced the amount and allowed the Commissioner for his services the sum of $1100.00. It appears that the Special Commissioner spent two days in hearing testimony and one additional day going to the place of hearing at St. Joseph, Missouri, and returning to his home at Moberly. The Com-

missioner's statement shows that in addition to the time he spent in hearing testimony and in necessary correspondence with the attorneys connected with the case, he spent time on 23 different days studying the evidence in the record and the exhibits, looking up law and preparing his report and statement of costs. The pleadings in the cause covered 21 pages of typewritten matter. The transcript of the proceedings before the Commissioner covered 513 pages. The record of the preliminary hearing before charges were filed against the attorney covered 165 pages and the report of the Special Commissioner covered 40 pages. In addition to the above the Commissioner's statement shows that he studied, checked and compared with the respondent attorney's testimony certain Circuit Court, Justice of the Peace, and Constable records in 76 cases which were introduced in evidence before him.

 Considering the nature, extent and value of the services rendered by the Commissioner and having in mind the amount allowed as fees for like services rendered by competent attorneys, we are of the opinion that a fee of one thousand dollars allowed to the Commissioner would be reasonable compensation for his services. It should be remembered, of course, that the money for the payment of such fees may ultimately come from the "Bar Fund" which, in turn, comes from the fixed and limited assessments paid by the lawyers of the state in the form of license fees to practice law.

We believe that, in addition to the $1000.00 to be allowed to the Commissioner, the other items amounting to $511.04 in the statement of costs are reasonable. We, therefore, hold that the allowances to be taxed as costs should be in the total sum of $1511.04.

 Under the provisions of Rule 5.10 the matter of taxing the costs in a disbarment proceeding is left to the discretion of the court. There is, therefore, no fixed standard for measuring the apportionment of the costs herein. It is true that the respondent attorney was found guilty on one count only, nevertheless, we hold that the informants were justified in filing all of the eight charges against him and offering testimony upon them. In view of this situation, we believe that the apportionment of costs, being a matter of discretion for the court, cannot properly be governed by the principles underlying the taxation and apportionment of costs under the statutes that apply to costs in an ordinary proceeding between adversary parties.

It must be remembered that this is not an ordinary action between adversary parties. It is a proceeding by the State through its selected agents, the Sixth Judicial Circuit Bar Committee, to inquire into the conduct of a member of the bar to determine whether such member should be disbarred, suspended, reprimanded · or acquitted on the charges made against him. The license to practice law is not given by the State as a right. It is a privilege granted subject to be withdrawn by the State either temporarily or permanently in accordance

with a just consideration of the facts shown in a proper hearing before a court.

In this case it was necessary for the Bar Committee in performing its public duty to bring to the attention of the Commissioner as the court's representative any and all evidence it deemed reasonably necessary to a full and fair inquiry into the accused attorney's misconduct. The Committee could not, of course, accurately determine in advance what quantum of proof would be necessary to sustain its various charges. Hence, it should not be held to be responsible for incurring the costs of all the charges even though it brought more charges against the respondent attorney than were sustained by the Court of Appeals.

As we view this record, the greater part of the evidence adduced by the Committee was necessary to a full inquiry. We believe, however, that the admissions made by the respondent attorney, thereby rendering the production of evidence to a certain extent unnecessary, should be considered in apportioning the costs. In view of the entire record and having in mind the nature of the proceeding, we are of the opinion that a just apportionment of the costs requires that the greater part thereof should be assessed against the respondent attorney. It was his conduct which made the proceeding necessary. In order to proceed in proper manner, the Bar Committee was required to take many steps which made necessary the incurring of attendant costs. The respondent attorney was found guilty of conduct that violated the high standards which have been set by the rules of this court to govern the actions of the members of the Bar of this State.

Having all the foregoing matters in mind, we hold that out of the total amount of costs of $1511.04 to be taxed herein, there should be taxed against the respondent attorney costs in the sum of $1000.00. The remaining portion of the costs, namely, the sum of $511.04, should be taxed against informants in their official capacities, to be paid out of the "Bar Fund."

The judgment of the Court of Appeals with respect to the costs only is quashed, and judgment is ordered entered on the costs in accordance with the views herein expressed. *Tipton, Clark* and *Ellison, JJ.,* concur; *Leedy, C. J.,* concurs in separate concurring opinion; *Hyde, J.,* concurs in the holding that the merits should not be considered, but he believes all of the costs should be taxed against the respondent-attorney; *Douglas, J.,* dissents in opinion filed; *Conkling, J.,* not sitting.

LEEDY, C. J. (concurring).—Some of the language of the Conner case, 357 Mo. 270, 207 S. W. 2d 495, is, in my opinion, entirely too broad and sweeping. Portions of it are susceptible to being construed as sanctioning an almost total want of procedural requirements in disbarment cases, as the dissenting opinion attests. Such is not the

practice. The principal opinion announces and applies the correct rule in that regard, and reaches the right result, and I concur in it.

 DOUGLAS, J. (dissenting).—I do not agree with the principal opinion. It is my view we should determine the case the same as on original appeal as authorized by Art. V, Sec. 10, Cons. 1945. The case was heard de novo by the Kansas City Court of Appeals after the report of its special commissioner, and should now be heard de novo by this court. The fact that Informants, Relators here, did not file a motion for rehearing after the case was heard originally and decided by the Court of Appeals should not bar us from considering the case on its merits. The informants filed a motion in the Court of Appeals that Mason be ordered to pay all the costs instead of just a slight portion of them. After the Court of Appeals denied the motion, we granted certiorari. We did this although the record showed no motion for rehearing had been filed in the Court of Appeals, as ordinarily required by our Rule 2.06. Rule 2.06 further provides that "any case coming to the Supreme Court after having been briefed on the merits in, and decided by, a court of appeals will be finally determined by the Supreme Court the same as on original appeal, whether such case comes to it by certification, transfer or certiorari."

"The failure of Informants to file a motion for rehearing in the Court of Appeals in nowise prejudiced Mason. The purpose of a motion for rehearing is to give the court which heard the case the opportunity first to correct its own errors. The failure to file such a motion did not deny Mason due process of law in the Court of Appeals, and will not in this court even if we determine the case on the merits. The entire record of the case is here before us. The case was argued here on the merits. Additional briefs to those filed in the Court of Appeals have been filed here. They deal with the case fully on the merits.

There is no question about the jurisdiction of this court to determine the case on its merits even though no motion for rehearing was filed in the Court of Appeals. "The final judgment of any circuit court or Court of Appeals in a disbarment proceeding by necessary implication is subject to final review by the Supreme Court." In re Conner, 357 Mo. 270, 207 S. W. (2d) 492.

A disbarment action under our jurisprudence is a proceeding sui generis. While it is not an adversary proceeding, a respondent must be accorded absolute fair play. But this court should not permit justice to be denied either to a respondent or to the public because of some harmless procedural technicality. "There can be no 'limitation upon the powers of the Supreme Court to govern the conduct of its officers', so long, of course, as due process shall have been accorded." In re Conner, supra.

This court said in Leimer v. Hulse, 352 Mo. 451, 178 S. W. (2d) 335: "This disposes of all questions on the record brought up on the writ of error. *However, since this case involves the fitness of a lawyer to continue his practice and as an officer of the court, we will not allow any technicalities to prevent our consideration of anything reasonably available which goes to the merits of the case.* We have, therefore, decided sua sponte (and by agreement of all parties at the oral argument herein) to make our own further investigation of the matter by ordering sent up from the Circuit Court the· transcript therein filed of the 1941 hearing before the Advisory Committee of the Bar Administration. This contains the testimony of all the persons concerned in the specific instances of misconduct charged in the information against Mr. Leimer and his own testimony in explanation of each."

This court in its rules relating to the professional conduct of lawyers has been careful, and properly so, not to tie its own hands in order that it would remain free to govern their conduct in absolute fairness both to them and to the public.

In the preample to Rule 4, the Canons of Ethics, it is stated: "Nothing herein contained shall be construed as a limitation upon the power of the courts to discipline any lawyer for professional misconduct." And in Rule 5, which provides for proceedings in cases of professional misconduct, we find in Rule 5.23: "Nothing in this rule shall be construed as a limitation upon the powers of the Supreme Court to govern the conduct of its officers. . . ." It seems to me that in this case we are setting up a procedural technicality to bar a review on the merits which does not necessarily belong in this type of proceeding.

Since it is my view that we should consider this case de novo and decide it on the merits, I dissent from the decision limiting our review merely to the question of the assessment of costs. In doing so I believe the principal opinion is out of harmony with our recent opinion in In re Conner, supra.