WALTER A. LEIMER, Plaintiff in Error, v. FRED B. HULSE, JOHN GROVER ET AL., Defendants in Error.—No. 38683.—178 S. W. (2d) 335.

Division One, January 3, 1944.

Rehearing Denied, February 7, 1944.

Motion to Transfer to Banc Overruled, March 6, 1944.

*Walter A. Leimer* for plaintiff in error.

454

*Frank W. Hayes* and *Roscoe P. Conkling* for defendants in error.

HYDE, J.—Proceeding in disbarment, on information of Advisory Committee, filed in the Circuit Court of Jackson County.

458

Judgment of permanent disbarment was entered, and case brought here on writ of error.

Mr. Leimer contends that the trial court was without jurisdiction because he had filed an application for change of venue which the court improperly overruled. However, the additonal abstract of the record shows that this was the fourth successive application for change of venue he filed, and that he was allowed three. The information herein was filed in February 1941. On March 19, 1941, he filed an application for change of venue (alleging prejudice of all judges of the Circuit Court) and the cause was transferred from Division No. 5 of the Circuit Court of Jackson County to Division No. 6. Thereafter, on April 30, 1941, he filed another application for change of venue (likewise alleging prejudice against all judges and naming all ten) and the cause was transferred from Division No. 6 to Division No. 9. He there filed a plea to the jurisdiction based on contentions that the Bar Administration organization violated constitutional provisions, but also alleging that the charges against him were without merit, and that the Bar Committee was actuated by improper motives. Thereafter on June 24, 1941, he filed another application for change of venue (alleging prejudice of the judge of Division 9 only) which was granted and the cause was transferred from Division No. 9 to Division No. 2. Thereafter on June 30, 1941, he filed another application for change of venue (likewise directed only against the Divisional Judge) which was denied in October 1941 after he had unsuccessfully sought a writ of prohibition in this court. His plea to the jurisdiction was then also overruled as was his demurrer and motion to strike, thereafter filed, in January and March of 1942. He then filed an answer and counterclaim, upon which answer (counterclaim stricken) the case was tried in April 1942.

Sec. 2121 (R. S. 1939) Mo. R. S. Ann. governs change of venue in Jackson County. It authorizes transfer from one division to another when prejudice against a judge of the division is claimed. However, it prohibits change of venue to any other county for such cause and further provides "only one such application shall be made by the same party in the same case, and shall be made as to only one of the judges of said court." This statute was upheld by this court in Eudaley v. Kansas City, Fort Scott and Memphis Railroad Company, 186 Mo. 399, 85 S. W. 366, (where plaintiff alleged prejudice of all the judges of the Circuit Court of Jackson County) saying: "Under that restriction, if the application for a change of venue had been based on objection to the judge in Division No. 3, and he had sent the case as the law required to another division the plaintiff could not have gone before that other division and asked for a change of venue on account of objection to that judge. . . . If, however, a party can do as this plaintiff has been allowed in this instance to do, he can by including as many judges as he sees fit in his one application evade the express provision of the statute and obtain

what is equivalent to several changes of venue." This ruling was followed and reaffirmed in Guy v. Kansas City, Fort Scott and Memphis Railroad Company, 197 Mo. 174, 93 S. W. 940. [See also State ex rel. Payne v. Pence, 240 S. W. 443; State v. Wagner, 311 Mo. 391, 279 S. W. 23; State v. Messino, 325 Mo. 743, 30 S. W. (2d) 750.] We, therefore, hold that the trial court correctly overruled the fourth application for change of venue and that it had jurisdiction to try this case.

The information against Mr. Leimer was in eight counts, which may be summarized as follows:

I.—Violation of Sec's. 1, 15, 22 and 32 of Rule 35 of the Supreme Court, by disrespectful, hostile and defiant demeanor, conduct, actions and attitude towards the courts, particularly in the Probate Court and in several divisions of the Circuit Court, as follows:

That during the trial of the case of Eva A. Leimer v. State Mutual Life Ins. Co. before Judge Buzard, in 1940, he often became angry and insulting to said Judge and on several occasions, following an adverse ruling by said Judge, made the followng statement: "Well, I did not think I was going to get any place in this law suit or before this Court," or words to that effect.

That in the case of Grossman v. Bockleman he charged that a Commissioner (member of the Bar) appointed by Judge Southern had accepted money from the other litigant in said case, to decide the matter against the client of the accused, when there was no basis upon which to base said charge.

That on numerous occasions, during 1937 and 1938, he was abusive and disrespectful to Judge Henderson of the Probate Court, and filed a suit in equity, in which he charged Judge Henderson with conspiring with others to keep Mattie M. Hamilton in the insane asylum; which charge was false and known by the accused to be false and accused did not introduce any evidence to substantiate the charges he made.

II.—Violation of Sec's. 1, 17, 22, 25 and 32 of Rule 35, by failing to show proper courtesy and consideration to members of the Bar, engaging angry personal colloquy and threatening opposing lawyers with bodily injury, as follows:

That in the trial of Grossman v. Bockleman, on several occasions, he invited attorneys for garnishee into the hall of the court house saying that he was going to give them a thrashing, said invitation being given in a threatening manner while Court was in session and being made without cause or provocation.

That in the trial of Leimer v. State Mutual Life Ins. Co. et al. in 1940, he did in the presence of the Court and jury, offer to whip counsel for the defendants without cause or provocation.

460

III.—Violation of Sec's. 1, 22, 25 and 32 of Rule 35, by insinuating in open Court that opposing counsel was guilty of highly improper conduct, when there was no basis whatsoever for such insinuation and by filing pleadings wherein he willfully charged members of the Bar of this state and others with crime, involving moral turpitude and highly improper conduct when there was no basis whatsoever for such charges and when he wholly failed to submit any proof of the truth thereof, as follows:

That in Walborn v. U. S. Tire Service Co. in 1935, he charged defendant's attorney with making a false and fraudulent affidavit in wanton, wilful and reckless disregard of the truth, and with having persuaded, induced and caused a witness to leave the state and jurisdiction of the Court and preventing him from giving testimony, and that although he knew them to be untrue he continued to press said charges against said member of the Bar in open court.

That in State Mutual Life Assurance Co. v. Leimer, in 1939, he charged that one of the attorneys had bribed or offered to bribe a witness in said case; that said charge was untrue and that although the accused was advised that the same was without truth, he failed and refused to withdraw said false charge.

That in Leimer v. State Mutual Life Assurance Co. et al. in 1940, he brought suit against three lawyers, who had represented opposing interests in litigation, charging them with obstruction and perversion of justice, fraud and conspiracy to prevent the due administration of the law, including bribery of witnesses, cheating and defrauding, malicious injury, false libel and the wrongful entering of the home of plaintiff and the taking therefrom certain personal property; that said charges were without truth or foundation and upon the trial of said cause completely failed to substantiate the same.

That in Hamilton v. Banta et al. in 1938, he brought suit against the Probate Judge, a guardian, and his attorney charging them with entering into a conspiracy to fraudulently obtain possession of plaintiff's property and conniving to have plaintiff adjudged insane, with having caused valuable diamonds and jewels of the plaintiff to be sold for an inconsequential sum, and having caused her furniture and valuable rugs to be distributed among defendants; all of which were untrue and by the accused known to be, and were by the Court dismissed.

IV.—Violation of Sec. 9 of Rule 35, in 1934, by writing a letter to a client of another lawyer saying: ". . . you would be better off if you dropped your claim in the Probate Court . . . your lawyers will get about all you have before you finish. . . . It looks like you have fallen into the hands of the wolves." He also falsely stated in this letter that the attorney handling the case had been sued for fraud.

V.—(The Court found against the charges made in this count, and we do not consider them.)

VI.—That in 1940 he threatened to make a clerk in the Assignment Division of the Jackson County Circuit Court, a party defendant in a suit for damages alleging conspiracy, libel and fraud without cause or reason.

VII.—That he was abusive and insulting to a Notary Public taking depositions in Leimer v. State Mutual Life Assurance Co., and accused her with having had his law offices entered and burglarized and valuable records disturbed and taken therefrom, and charged that she had wilfully and falsely altered and changed testimony taken by her and before her as a Notary Public, all of which charges and accusations were untrue and false.

VIII.—Violation of Sec. 47 of Rule 35 generally in that he has wilfully, knowingly and unlawfully acted against the interests of the public and that he is guilty of such other misconduct as hereinbefore set forth whereby, for the protection of the public and those charged with the administration of justice, he should no longer be entrusted with the duties and responsibilities belonging to an attorney.

In his pleadings (Plea to Jurisdiction, Demurrer, Motion to Strike, Answer and Counterclaim) Mr. Leimer denied the facts alleged and stated many matters which he now re-states in "Points and Authorities" in his brief filed herein. (His brief contains no "Assignments of Errors" but we take his "Points and Authorities" for such "Assignments" because of the way they are stated.) His counterclaim which was stricken (he claims erroneously) sought a declaratory judgment to the effect that the rules of this court, establishing the Bar Administration, providing for its operation and the organization of the Bar thereunder, were unconstitutional and invalid. (Substantially the same contention made in his overruled plea to the jurisdiction.) It also contained a second count full of wild charges against the members of the Advisory Committee and asking the court to declare "that complainants have wrongfully and maliciously built up and maintained false and malicious claims against defendant, knowing them to be such; that complainants have breached their trust and violated their high office and that they are unfit to hold the same; that they have unnecessarily misappropriated funds under their trust in soliciting and building up claims against defendant". The court certainly had at least discretionary power to strike this so called counterclaim as not the proper subject for declaratory judgment under the circumstances. [See State ex rel. United States Fire Ins. Co. v. Terte, 351 Mo. 1089, 176 S. W. (2d) 25.]

Mr. Leimer's present contentions include the claim that our whole Bar disciplinary organization is improper and unconstitutional; that

the information herein failed to state a cause of action; that the conduct alleged against him attempted to charge him with contempt in trials that had been completed and which contempts could only have been tried or punished in the cases and before the courts in which they occurred; that statements made against judges or lawyers in pleadings filed by him were privileged and could not be made the basis of malice or other charges against him; and that matters were considered which occurred before the Bar disciplinary rules were adopted. For these reasons, he claims the entire proceedings are *coram non judice* and void. The court specifically found the facts to be as stated in all counts of the information as above set out (except Count V) and that the rules referred to had been violated.

All of Mr. Leimer's contentions concerning the authority of this court to establish the Bar disciplinary organization and continue its functions as provided in our Rules 35 to 37 inclusive, have been considered and decided in In re Richards, 333 Mo. 907, 63 S. W. (2d) 672; In re Sparrow, 338 Mo. 203, 90 S. W. (2d) 401; State ex rel. Clark v. Shain, 343 Mo. 542, 122 S. W. (2d) 882. We reaffirm these rulings for the reasons therein stated.

The contentions as to the effect of conduct which could have been punished as contempt, as to the claim of privileged statements, and as to the time when the alleged·conduct occurred all go to the sufficiency of the information to state a cause of disbarment and the validity of the proceedings under it. This case is here on writ of error without any evidence preserved by bill of exceptions. (Bill shows only certain pleadings and motions and action thereon.) However, the question of the sufficiency of the information in the respects challenged is of course a matter to be determined on the record proper.

The idea of punishment is not the purpose of disbarment from practice. [5 Am. Jur. 411, Sec. 249; 7 C. J. S. 771, Sec. 28.] If any punishment is required that is a matter to be determined in some other and different proceeding. An attorney is an officer of the court and as such has a most important part in the administration of justice. His conduct in the performance of his proper functions in this respect is a matter in which the public has an interest. For this reason, he must possess good moral character to be admitted to the Bar and must qualify himself by the long preparation and study prescribed. He must demonstrate his qualifications by passing strict tests. To properly do his part as an officer of the court in the administration of justice, his conduct must conform to a high standard of ethics. Anything less than these standards may bring disrepute upon the legal profession, impair the standing of the courts and impede' the administration of justice. Thus, "the purpose of suspending or disbarring an attorney is to remove from the profession a person whose misconduct has proved him unfit to be intrusted with

the duties and responsibilities belonging· to the office of an attorney, and thus to protect the public and those charged with the administration .of justice.'' (5 Am. Jur. 411.) Therefore, while the attorney might have been guilty of conduct on particular occasions, which could have then been punished as contempt and which alone might not be ground for disbarment, nevertheless such conduct can be considered in connection with other conduct (also violating the code of ethics established by this Court) to determine whether his entire course of conduct shows unfitness to remain a member of the Bar. [7 C. J. S. 751, Sec. 23d (1) & (2).]

Likewise the question of privilege as to statements in pleadings is not controlling. Such privilege may bar a libel suit, but there still may be a remedy under certain crcumstances; as for example, by action for malicious prosecution. So also such statements, their falsity, and the intent with which they are made may be material in a disbarment proceeding. [7 C. J. S. 753, Sec. 23; Duke v. Committee of Grievances (USCCA) 82 Fed. 2d 890.] Certainly this must be true where unfitness is claimed because of continued course of conduct which interferes with the proper administration of justice. The basis of the information herein is a continuous course of conduct over many years continuing up to the time of preparing the charges. Therefore, it would not be improper to show conduct throughout any reasonable period; and the earliest date mentioned in the information is January 1, 1930. Even though some acts as far back as sixteen years may have been shown in evidence (as claimed), most of the matters alleged in the information were recent. Furthermore, the duty of lawyers to properly conduct themselves did not begin only after the present rules were promulgated. [See In re Sparrow, supra; In re Williams, 233 Mo. App. 1174, 128 S. W. (2d) 1098.] It is clear these contentions for claiming the information does not state a cause of action or that the proceedings under it were invalid cannot be sustained. The claim of misjoinder of causes of action, also made here, is obviously without merit.

There is clear authority requiring us to hold that this information amply states a cause of action and that the specific acts set out are sufficient grounds for disbarment. These acts may be classified as follows:

(1) Disrespectful conduct toward the courts, not only in court, but also by falsely accusing a Commissioner of the court of accepting a bribe to decide a case against him, and by making charges against the Probate Judge in pleadings and otherwise which there was no evidence to substantiate.

(2) Threatening physical violence to opposing lawyers.

(3) Making baseless false charges against opposing lawyers of bribing and concealing witnesses, of intent to defraud, of conspiracy

464

to obstruct justice, and of entering his home and taking personal property.

(4) Improper conduct toward court officials by threatening suit against a court clerk without reason and by using abusive language toward a notary public and falsely charging alteration of deposition and burglarizing his office.

Certainly such conduct violates the rules of conduct established by this court in our Rule 35 and violates the standards, long established and well understood by decisions of courts in other jurisdictions. In Duke v. Committee of Grievances, supra, an attorney in an application for certiorari and other pleadings in connection therewith made wholly unfounded charges that the district attorney and the judge were corruptly obstructing justice by presentation and authentication of a false bill of exceptions, and also filed an affidavit in another case, which he caused his client to make, restating these charges. It was contended "that the publication thereof as made did not constitute a crime in law, but were privileged." The Court said: "Whether there has been a crime committed or not, in the charges made by the respondent, is not the question presented on this information; nor does the question of privilege arise. The court can not be precluded the right, by the suggestion of any such defenses, to determine the question, whether the respondent be a fit and proper person to remain a member of the bar of this court. . . . He and all other attorneys becoming members of the bar of the particular court in which the oath is taken, become officers of the court, and as such are bound to observe a proper decorum in their professional dealings and relations, not only with the court, but with their brother members of the bar. He has no right to attempt to cast foul and unfounded aspersions upon the character and conduct of his brother members of the bar, any more than he has to asperse and defame, without justification, the character and motives of the judge upon the bench. Especially is he without warrant in an attempt to make the records of the courts, from the lowest to the highest, vehicles of malicious scandal and libel of any member of the bar. Upon any other principle for the government of the bar, it would be impossible to conduct business with decorum and with due regard to the orderly proprieties of a court of justice. . . . Indeed, the power of disbarment, as means of protection, would be of little practical use, if it were not applicable to such cases." Likewise, In re Macy, 196 Pac. 1095, 14 A. L. R. 849, the Supreme Court of Kansas held: "An attorney at law, who, to accomplish his own purpose or that of his client, files a pleading in an action, charging another attorney, who is a party thereto, with misconduct which, if true, would subject the latter to criminal prosecution and to ouster from an office held by him, is guilty of such misconduct as shows him to be unfit to practice law, if the attorney filing the pleading knew, or should have known,

that the charge made was false." We therefore hold the information sufficient and to fully warrant the judgment of disbarment.

This disposes of all questions on the record brought up on the writ of error. However, since this case involves the fitness of a lawyer to continue his practice and as an officer of the court, we will not allow any technicalities to prevent our consideration of anything reasonably available which goes to the merits of this case. We have, therefore, decided sua sponte (and by agreement of all parties at the oral argument herein) to make our own further investigation of the matter by ordering sent up from the Circuit Court the transcript therein filed of the 1941 hearing before the Advisory Committee of the Bar Administration. This contains the testimony of all the persons concerned in the specific instances of misconduct charged in the information against Mr. Leimer and his own testimony in explanation of each. It also appears therefrom that complaints were made against Mr. Leimer in 1936, and investigated by the Bar Committee for the Sixteenth Circuit, but at his request the State Advisory Committee took over the matter. After a hearing at that time, the case was held in suspension upon representations that the matter would be corrected. The Advisory Committee's final hearing, before filing this case in the Circuit Court, was commenced on January 3, 1941. Most of the charges then investigated were concerning conduct between 1936 and 1941. At this hearing, the committee appointed two able members of the Jackson County Bar, suggested by Mr. Leimer, to represent him and they cross-examined witnesses and assisted in bringing our explanatory testimony. Our conclusion, from a careful consideration of this testimony, is that it is sufficient and ample to sustain the findings of fact made by the trial court and would fully support the judgment.

The judgment is affirmed. All concur.