In the Matter of HAROLD D. CONNER.—No. 39956.—207 S. W. (2d) 492.

Court en Banc, January 12, 1948.

*Clem F. Storckman, John S. Marsalek* and *Clifford Greve* for appellants.

*Jack B. Schiff* for respondent.

*William J. Blesse* and *Forrest M. Hemker* for The Missouri Bar, amicus curiae.

276

E. M. Schaefer, Jr., and Roberts P. Elam for The Bar Association of St. Louis, amicus curiae; Harry Gershenson, Robert D. Evans, Frank E. Morris, Fred A. Eppenberger, Otto R. Erker, C. Kenneth Thies, Joseph A. McClain, Jr., Richard D. Shewmaker, and William W. Crowdus of counsel.

[493] CONKLING, J.—This disbarment proceeding comes to the writer upon reassignment. The respondent, Harold D. Conner, a licensed and practicing attorney, after preliminary investigation, and on April 2, 1946, was informed against in the Circuit Court of the City of St. Louis. Filed under our Rule 5, the information of the 8th Judicial Circuit Bar Committee charged respondent with professional misconduct in that he failed to pay over certain sums held by him as administrator and due the distributees of an estate upon a final settlement, contended that said sums were wrongfully converted to Conner's own use, and prayed that he be disbarred from the practice of law. After a hearing wherein respondent admitted

the [494] charges made, the circuit court entered the following judgment: "Cause heard and submitted. Court finds respondent guilty and assessed punishment of ninety days from date of his suspension of the practice of law in Missouri. Costs against respondent." Informants filed exceptions contending the judgment was inappropriate and inadequate in that under the facts the judgment should have been permanent disbarment. After the exceptions were overruled Informants filed their notice of appeal to this Court.

At the outset we are confronted with the question of our right to consider the merits of Informants' contention that the judgment of the circuit court of ninety days suspension from the practice was inadequate. Do we have jurisdiction? That question this Court raised sua sponte when this cause was submitted in this Court in Division. Of the Court's own motion the proceeding was thereafter transferred to the Court en Banc. Counsel for Informants and counsel for amicus curiae contend we have jurisdiction. Respondent's counsel contends the contrary. All the briefs filed in this cause show much research. But the precise question above referred to and now for determination has never been before us. It is one of first impression, and of difficulty.

The exact question raised by the inquiry into our jurisdiction is whether the Bar Committee *by appeal* can bring to us the question raised in their exceptions filed in the Court below.

The pertinent portion of our Rule 5.11 is as follows: "In all cases authorized to be filed under this rule the Informants or Respondent may except to the decision of the Trial Court and may thereafter, within thirty days from the date the exceptions are overruled by the Trial Court, seek a review of such decision by this Court by the institution of such appropriate proceedings as may be authorized under the Constitution and laws of Missouri." Our Rule 5.23 in part provides: "Nothing in this rule shall be construed as a limitation upon the powers of the Supreme Court to govern the conduct of its officers", etc.

Section 1 of Article V of the Constitution, in part, provides that: "The judicial power of the state shall be vested in a supreme court", etc. Section 2 of that Article, in part, provides: "The supreme court shall be the highest court in the state." Section 4 of that Article, in part, provides: "The supreme court, . . . shall have a general superintending control over all inferior courts", etc. Section 5 of that Article, in part, provides: "The supreme court may establish rules of practice and procedure for all courts."

In a peculiar sense attorneys-at-law have long been held to be officers of the courts. They are so "important to the exercise of the functions of the judicial branch of government that the courts cannot exist as operative institutions without them." In re Cate (Cal. App.), 270 Pac. 968. Informants are named by this Court under

Rule 5 to perform without remuneration an onerous service distasteful to every lawyer, the duty to perform which is upon this Court (but which we have authority to delegate). Those whom we appoint, and their counsel, render a service vital to the administration of justice. They are an arm of the judiciary charged with the performance of a high public duty in a wholly disinterested and unbiased manner. Their first duty is investigation. Their further duty is the protection of all attorneys against unjust and unfounded charges of misconduct, and the preservation of the courts of justice from any official ministration by persons unfit to practice therein. Whatever justice, in their best judgment requires, that they must do. By the processes provided by Rule 5 the courts, the public and the bar are sensitive of. protection against any corrupt practices which result in injury to the public, reproach upon the legal profession and disrespect for the judicial system.

Without restating at length the views we have heretofore expressed in In re Richards, 333 Mo. 907, 63 S. W. (2d) 672, In re Sparrow, 338 Mo. 203, 90 S. W. (2d) 401, Clark v. Austin, 340 Mo. 467, 101 S. W. (2d) 977; State ex rel. Clark v. Shain, 343 Mo. 542, 122 S. W. (2d) 882, Leimer v. [495] Hulse, 352 Mo. 451, 178 S. W. (2d) 335, and in other cases in which the rule of those cases has been consistently followed and reaffirmed, this Court, independent of any other branch of the government, has inherent power to fully regulate the admission and disbarment of its attorney officers, to accomplish. all objects within its orbit, and to provide procedure by rule. There can be no "limitation upon the powers of the Supreme Court to govern the conduct of its officers", so long, of course, as due process shall have been accorded. And the power to discipline or disbar is not limited to instances of conviction of crime, nor to instances of professional misconduct, but may be exercised in cases of misconduct which show the character of an attorney to be such as to unfit him for the office of attorney. In re Wallace, 323 Mo. 203, 19 S. W. (2d) 625, State ex rel. Clark v. Shain, supra. The instant proceeding is neither adversary, civil nor criminal in nature, but is one sui generis, an investigation into the conduct of a court officer, having for its object "not the punishment of the offender but the protection of the court".

Keeping in mind the broad principles which have been announced, the rules, and the constitutional provisions, we can reach no other conclusion but that we are not precluded from an examination into the merits of this inquiry merely because counsel for Informants filed a notice of appeal instead of seeking "a review of such decision by this Court" in some other manner.

The history of Rule 5.11 clarifies its meaning. Following our opinion in the Richards case, supra, this court appointed a Commission. on the Regulation of the Practice of Law. Its report appears

in Volume 5 of the Missouri Bar Journal, page 67, et seq. On November 1, 1934 we adopted that report and promulgated it as our Rule 36. Sub-paragraph 9 of Rule 36 provided for review of the disciplinary actions mentioned in Rule 36, and stated, in part: "Appeals shall be allowed to this Court as in civil cases." Thus, it provided for an appeal by either the Bar Committee or the attorney informed against. Notwithstanding Section 3 of what was then Rule 36 provided for the filing of an information in either the Circuit Court or the Supreme Court, in 1935 we correctly held in In re Sparrow, supra, that a Court of Appeals had original and inherent jurisdiction of a disbarment proceeding instituted in a Court of Appeals. That decision, however, did not take from us our power to govern the conduct of attorneys. In 1938, in State ex rel. Clark v. Shain, supra, it was urged upon us that we should by certiorari exercise superintending control over the Court of Appeals in a disbarment action. In that opinion we reserved that question and declined to rule it.

In 1939 what was then our Rule 36 was revised. It is now our Rule 5. Remedial details were inserted. Procedural provisions were re-written. The form of notice was prescribed and like changes made. To conform to our ruling in the Sparrow case, Section 3 of Rule 36 was enlarged and power was given (it is now Rule 5.03) by leave of court to file informations also in the Courts of Appeals.

Having given the Courts of Appeals original jurisdiction in disbarment cases by both the Sparrow case and by Rule 5.03, and having reserved the question of superintending control in the Williams case, 113 S. W. (2d) 353; State ex rel. Clark v. Shain, 343 Mo. 542, 122 S. W. (2d) 882; it became necessary to revise also what was Section 9 of Rule 36. That revision is now our Rule 5.11.

By the language used in Rule 5.11 we intended to and did enlarge the scope of review. This rule is ancillary to the administration of justice itself. By Rule 5.11, in all proceedings under Rule 5 the final judgments of Courts of Appeals and circuit courts are reviewable by this Court at the instigation of either party and by any "appropriate proceedings", or any available method of review, including an appeal. Any available proper proceeding is included within the word "review". We substituted the broader word "review" for the more limited word "appeal". We expressly recognized the right of appeal granted to either Informants or respondent by Subsection 9 of our former Rule 36 and carried such right of appeal by either the attorney or Informants forward into Rule 5.11 by [496] special recognition of the right to Informants or respondent to file exceptions, and within thirty days to seek a review. If we had not intended that Informants should have the right to be heard by this Court under the instant circumstances we would not have preserved by Rule 5.11 their right to file exceptions. The right to file exceptions was given as the predicate to the right of review.

It is highly significant that into Rule 5 we wrote Section 5.23 stating that nothing in Rule 5 should "be construed as a limitation upon the powers of the Supreme Court to govern the conduct of its officers", etc. Those words are not meaningless. Nor are they susceptible of more than one meaning. The meaning is plain. These things point unerringly to the fact this Court was not rewriting the rule to take from Informants their right of review by appeal, or otherwise, as it had formerly existed under Sub-section 9 of former Rule 36. Any other view as to the meaning of our Rule 5.11 would in effect hold that by our Rule 5.11, it was our intention to and that we did delegate to the circuit courts and to the Courts of Appeals (as to disbarment cases originally filed in those courts) all our inherent power to regulate disbarment of attorneys. That we did not do.

By Section 4 of Article 5 of our Constitution it is provided that this Court "shall have a general superintending control over all inferior courts", etc. While procedural rules are necessary that the practice may be orderly and settled and that counsel and litigants may be advised, by that constitutional provision, upon application, we are mandated to review and superintend the instant judgment of the circuit court. We could not, if we would, by rule delegate to any inferior Court the constitutional power given this tribunal in that respect.

Other sound reasons appear. The judicial department of the state, acting through the Supreme Court, is inherently vested with power to control and conduct its own affairs, to maintain its own dignity, to see that justice is fairly and evenly administered and to fully regulate the admission and disbarment of its own officers. In re Richards, supra, Clark v. Austin, supra, Leimer v. Hulse, supra, In re Pate, 119 S. W. (2d) 11; In re Lacy, 112 S. W. (2d) 594, 604. Such power is protective and stems from the constitutional creation of the judiciary, the separation of powers, and its existence as "the highest court in the state". In re Richards, supra; In re Sparrow, supra; Constitution of Missouri. The Supreme Court must maintain the dignity and purity of the judicial department and protect all courts and the public from those no longer qualified to practice law. In re Sparrow, supra, In re Pate, supra. To that end, permission to practice law and disbarment from further practice is within the Supreme Court's exclusive final cognizance. It has "inherent judicial power to regulate non-procedural matters ancillary to the administration of justice". Tyrrell Williams, "The Source of Authority for Rules of Court Affecting Procedure", XXII Washington University Law Quarterly, p. 459, et seq. While the General Assembly has power to legislate in aid of the instant subject (see Mo. R. S. A. sec. 13328), no statute can control, frustrate, limit or defeat the Supreme Court in the full performance of its duty, where review

is sought, to finally decide, who shall enjoy the privilege of an attorney-at-law. In re Richards, supra, Clark v. Austin, supra, In re Sparrow, supra.

So deeply merged into the judicial department and the judicial function is the peculiar nature of the instant proceeding that the courts have widely recognized that procedural requirements applicable to ordinary actions at law and mere forms not affecting the merits in disbarment proceedings should not be permitted to hinder full protection of the courts and the public, where all rights of full hearing, representation and cross-examination have been, accorded. Leimer v. Hulse, supra; In re Keenan, 313 Mass. 186, 47 N. E. (2d) 12; In re Sparrow, supra. And confidence in the courts is always promoted where causes are disposed of upon the merits rather than upon procedural questions. Supreme Court Rule 1.28. In disbarment proceedings formal matters, required to be [497] observed in strict law actions, are followed only insofar as the same are appropriate. Procedure in disbarment is seldom uniform, varies widely with the state or Federal jurisdiction in which the action is pending and seldom follows any local code of civil procedure. Generally, the judicial department of the jurisiction involved adopts and uses any procedure it deems appropriate to disbarment. Leimer v. Hulse, supra. Rule 5 Missouri Supreme Court; In re Keenan, supra; 7 C. J. S. Attorney and Client, p. 767, et seq.; 5 Am. Juris. Attorneys at Law, p. 433, et seq.

The power of the judicial department to determine and by rule promulgate appropriate proceedings for the admission and disbarment of attorneys-at-law of necessity extends to and includes also the determination and adoption of what are "appropriate proceedings" for review of disbarment cases. The judicial department may adopt and by rule promulgate any method of review it deems appropriate. In re Richards, supra; In re Keenan, supra. It may likewise determine whether the method used to secure a review be a proper and appropriate proceeding. The notice of appeal used in this instance by Informants was an appropriate proceeding. It gave proper notice that a review of the trial court's judgment was sought. The "appeal" method used to seek a review by the Supreme Court in the instant case has no reference to the statutory appeal nor do we use the word "appeal" in a statutory sense, wherein, in certain instances, statutes do or do not allow appeals. The cases cited by respondent in his brief deal with appeals that are purely of statutory creation. The appeal in the instant case was a proper method of bringing the proceeding here which is embraced within the word "review" used in Rule 5.11. No statute is here involved. The General Assembly has no power to enact a statute which can frustrate or infringe on the right of the Supreme Court to fully and finally regulate disbarment of attorneys, or to review by appeal, or

otherwise, the judgments of inferior courts in disbarment proceedings. Of necessity, this Court has the inherent right to approve the method of review. Clark v. Austin, supra; In re Richards, supra. But we do not mean that when a disbarment proceeding is brought here for review that any of the prescribed rules of practice in this Court disappear.

The final judgment of any circuit court or Court of Appeals in a disbarment proceeding by necessary implication is subject to final review by the Supreme Court. That would be true if our Rule 5 had omitted all reference to review. The jurisdiction of the judicial department of the state, except when acting through its highest court, cannot be totally exhausted by a judgment either favorable or adverse to an attorney in a proceeding for his disbarment. While the circuit courts and Courts of Appeals have original jurisdiction in disbarment cases, and while it may of course be assumed such courts understand that the object of the proceeding is not punishment of the attorney but protection of the courts and the public, and while it may be assumed a sound judicial discretion will be exercised, yet, the whole and entire discretion with respect to the fitness of attorneys does not lie in the inferior courts.

The right of review is not granted to an accused attorney because he is a mere party to the proceeding, but because he is entitled to have the court of last resort (upon which such duty rests) determine whether he has been deprived of a valuable privilege. If the review by the Supreme Court of the action of the inferior court were not allowed it could not be known whether the discretion of the inferior court had been soundly exercised, and whether the proceedings below were regular and fair to the accused.

The basic right of an attorney informed against cannot reasonably be of a higher order, or more sacred, than the right of the courts and the public to be protected from any professional misconduct or unfitness of those having licenses to perform the important functions of the legal profession. Grievance Committee of Hartford County Bar v. Broder, 112 Conn. 263, 152 Atl. 292. The attorney informed against has the right of review. That is as it should be. That being true, his right to have reviewed by the Supreme Court any claimed unreasonable [498] exercise of discretion, or any claimed irregularity or unfairness of the court below, can be no greater than the right of the public and the courts to have those matters reviewed. The latter are entitled to the same right of review. Courts possess the inherent protective right here invoked, promulgate procedure as in Rule 5, and adjudicate instances of exoneration, or misconduct, all to the end that justice may be done. If the right of review be denied Informants who represent the interest of the court and the public, we would many times leave to an uncontrolled discretion of a single judge the whole discretion inherently possessed by the Supreme Court.

Thus by refusing to rehear we would delegate away the power to review the hearing procedure and the reasonableness of the exercise of the lower court's discretion, no matter how arbitrary, irregular and unfair the lower court's action may have been to the public interest. It would be unjust, unfair, unsafe and the denial of equal protection to deny to the courts and the public the same safeguard and the same application of our rules which we make for an individual possessing a license to practice law. To do so would be to administer justice but half way.

In promulgating Rule 36 and Rule 5, in what we have said upon this subject in the Richards case, and since, it was and now is our view that, if our review is sought, these inquiries into fitness should be carried through to ultimate determination here. The administration of justice cannot be served, the courts and the public cannot be protected, and the legal profession cannot be protected from unfit members in any other way.

[4] The above brings us to the question of whether the trial court's discretion was reasonably exercised. Before proceeding to a consideration of this phase of this proceeding upon the facts of record, we re-affirm that the power to disbar or suspend an attorney is not an arbitrary one to be exercised lightly, or at pleasure, or in hostility, or with either passion or prejudice. The problem presented is always approached by the Courts with a deep sense of responsibility. Such power is to be used only in moderation with sound judicial discretion and only in a clear case, for weighty reasons and on clear proof. It is not a pleasant duty when Courts are required to sit in judgment upon a member of the bar but protection must be afforded against professional misconduct and the continuance of the exercise of the privileges of the office of attorney by one who has forfeited such privileges.

It was in evidence and undenied, that, with respect to the estate in question, on October 25, 1941 a citation was issued by the Probate Court to require respondent to file a semi-final settlement. On October 31, 1942, a citation for settlement was again issued. On January 23, 1943, an alias citation for settlement was issued. On September 21, 1943 final settlement was filed. On January 14, 1944 final settlement was approved and the Probate Court made the order of distribution. No distribution was made. In August, 1945 an execution was issued by the Probate Court against respondent and returned unsatisfied. Written demand for distribution was prepared by counsel for certain distributees and served upon respondent with no result. By telephone and by mail respondent was repeatedly requested by the clerk of the Probate Court, and others, to make final distribution of the moneys in his hands as administrator. Nothing was accomplished. Respondent made no distribution. He merely ignored his duty and all such requests.

Proceedings were thereafter begun to require the surety company on the bond of respondent as administrator to make good the money due from respondent to distributees. When served with the notice of the preliminary inquiry of the Bar Committee into the matter, under our Rule 5.03, and when requested personally by counsel for Informants to do so, respondent failed to appear and took no notice of the investigation or of the hearing before Informants. After the Bar Committee filed the information in the Circuit Court the proceeding, in due time, was set for hearing by Judge Kirkwood for April 25, 1946. Respondent even failed to appear in court. But his counsel appeared and requested (but did not urge) a change of venue, and a continuance. The latter was denied. Dilatory [499] measures were resorted to unavailingly. On that date the Court heard the testimony on behalf of Informants, respondent's counsel cross-examined all witnesses, and the trial court thereupon continued the hearing for five days to give respondent's counsel a chance to get respondent into court.

On the day last named by the Court respondent finally appeared, and, in his testimony, admitted the charges in the information but stated that he had used distributees' money to send to his brother who was in financial difficulties; that he had expected the money would be presently repaid; but that that did not result. He further testified that he had made a partial distribution of $100 to one of the distributees, and offered then to make full distribution under the order of final settlement. Before entry of its judgment the trial court said: "What *punishment* can this Court assess, under the rules? . . . I have about made up my mind, Gentlemen, I am going to enter a ninety day suspension upon making restitution *and it is simply by way of punishment* . . . I have got to enter some *punishment*, Mr. Conner". (Emphasis ours.) Accordingly, on the second day of the hearing the Court entered the judgment set out in the opening paragraph hereof. Whether restitution was ever made does not appear. Nor is restitution determinative here.

From the above quoted statements it clearly appears that the trial court did not correctly view the true nature of the inquiry he was conducting. The courts of this state have long recognized and ruled that the instant proceeding is *not* one instituted to *punish* an attorney. Punishment is administered under the criminal laws. Merely that the record facts may have been cognizable under the criminal statutes did not convert the instant inquiry into a case for the administration of punishment. The proceeding was an inquiry into the fitness of an attorney to continue as such, having as its objective the protection of the courts and the public. In re Richards, supra; In re Sparrow, supra, and cases following. The privilege to practice law, quite unlike the right of a citizen to engage in an ordinary trade or business, carries no inherent right to continue in the prac-

tice. It is but a privilege given and continued to those who demonstrate mental attainment and moral character. The Courts set up special machinery to test applicants by standards fair to all. Only those who pass such tests are licensed. The fit are thus separated from the unfit.

It may be here observed that the true lawyer ever remembers that his license confers upon him the exalted privilege of a minister of justice. But of necessity the privilege to continue in the practice depends upon his remaining a fit person to exercise the privileges granted him. The requirement of an attorney that he be of good moral character, that he be honest, continues throughout his professional life. He must maintain those standards so long as he is a member of the profession. To those who acquire the privilege and who continue to be a fit person, come the honors and emoluments of a profession public in its very nature. This monopoly which lawyers have in a quasi-public profession is neither created nor preserved for personal advantage. But it can be justified in the experience of the centuries which has demonstrated that the system is necessary to the public welfare. For these reasons, in a proceeding of this character, considerations of public welfare must always be dominant.

At the time of the offense admitted by respondent he was of middle age and mature in experience. He fully understood the nature of his act. It was not done suddenly, but deliberately. His refusal to recognize either his wrongful act, or his responsibility for it, extended over a long period. Respondent knew the money he converted and used was not his own. He was fully cognizant of the existing fiduciary relationship. But he treated the money as his own. After the information was filed, and when this proceeding was upon its hearing in the circuit court, he declined to even appear in court until Judge Kirkwood advised his counsel that a judgment of disbarment would be entered if respondent failed to appear in court on April 30, 1946.

Misconduct of attorneys in converting and using money held in a fiduciary capacity has been before us in other [500] cases. We have uniformly held such conduct justifies disbarment. In State Bar Committee v. Stumbaugh, (Mo. Sup.) 123 S. W. (2d) 51, this Court said: " 'Whether so provided by statute or not, it is always a ground for the disbarment of an attorney that he has misappropriated the funds of his client, either by failing to pay over money collected by him for his client, or by appropriating to his own use funds intrusted to his care' . . . 'The law requires that a lawyer shall maintain a higher moral standard than simply to avoid conviction of embezzlement or larceny. His clients are entitled to rely on his honesty and on his devotion to their interests.' The fact that appellant settled with his client on the day of this hearing did not operate to relieve him of the charges.''

Many courts, in many jurisdictions, have made many like dispositions of disbarment proceedings which were based upon like or similar facts. A few of such cases are: In re Block, (Mo. App.) 136 S. W. (2d) 358; In re Buchanan, 28 Mo. App. 230; State v. Page, (Mo. App.) 186 S. W. (2d) 503, 506; Pearcy v. Page, (Mo. Sup.) 201 S. W. (2d) 403; People ex rel. Black v. Smith, 290 Ill. 241, 124 N. E. 807; In re Radford, 168 Mich. 474, 134 N. W. 472; In re Chandler, 2 Jur. N. S. 366, 52 Eng. Rep. 1105, 25 L. J. Ch. N. S. 396; Hand v. Law Society of Upper Canada, 17 Ontario App. Rep. 41; In re Flowerman, 168 N. Y. Supp. 860, 181 App. Div. 488, People v. Meyerovitz, 278 Ill. 356, 116 N. E. 189; In re Allen, 75 N. H. 301, 73 Atl. 804, Colo. Bar Assn. v. Betts and Rinkle, 26 Colo. 521, 58 Pac. 1091; In re Sparks, 267 Ky. 93, 101 S. W. (2d) 194; In re Kaas, 39 S. D. 4, 162 N. W. 370; See also, 5 Am. Juris. Attorney and Client, p. 423; 7 C. J. S. Attorney and Client, p. 746. See also Mo. R. S. A. Sec. 13328.

It is further urged upon us that because respondent finally, and on the last day of his court hearing below, offered to make restitution we should approve the circuit court judgment of a ninety day suspension from practice. But we are not persuaded to that view. In the Stumbaugh case, supra, we declined to permit similar facts to relieve the attorney of the charges and adjudged his disbarment. The payment at long last of the money due to distributees might, or might not, satisfy those persons but it does not deprive the public of its right to be protected against an unsafe member of a privileged class. Nor does it deprive the courts of their right to have attorney officers who are conscious of their high duty to the public, to the courts and to their profession. If a professional man offers to do the right thing merely because he might be degraded and disbarred if he failed to, he has ceased to act uprightly. When attorneys take their oaths as court officers they pledge themselves to something far above the honesty of compulsion. As members of this Court we cannot, without being derelict in the duty we owe the public and the profession, directly or indirectly certify to the honesty of an attorney whose conduct has been such as to render him an unfit member of an honorable profession. The good repute of the judicial system and the legal profession greatly suffers by indulgence in mistaken lenity when the courts approve the unjust and plainly dishonest withholding of money by an officer of the court. We cannot approve such conduct. It plainly merits the withdrawal of the privilege to continue to practice law.

Accordingly, the judgment of the circuit court is ordered modified to conform to the ruling herein made, the respondent is hereby disbarred from the practice of law and his name is ordered stricken from the roll of attorneys in the courts of this state. It is so ordered. All concur except *Leedy, J.,* who concurs in result.