**In re Donald K. ALEXANDER, Applicant.**

No. 73107.

Supreme Court of Missouri, En Banc.

April 9, 1991.

Rehearing Denied May 3, 1991.

Donald K. Alexander, Columbia, for applicant.

Dale C. Doerhoff, Jefferson City, for respondent.

HOLSTEIN, Judge.

Donald K. Alexander appeals from a decision denying his application for registration as a law student. The application was denied following a hearing before the Honorable Jack O. Edwards, acting as surrogate for the Board of Law Examiners. The denial of the application is affirmed.

This is apparently the first published opinion in which this Court has addressed the procedural and substantive law relevant to law student registration applications made in anticipation of taking the Missouri Bar examination as provided in Rule 8.[1] Among its other responsibilities, the Board of Law Examiners (Board) is charged with determining "the moral character and general fitness of applicants for registration as law students and of applicants for admission to the Bar." Rule 8.02(c). Registration as a law student is one of the prerequisites to taking the bar examination. Rule 8.03. One whose application for registration as a law student is denied is entitled to a hearing before the Board and provision is made for appeal to this Court. Rule 8.12. However, the rules are silent as to the standard of review on appeal.

There are compelling reasons for concluding that, on appeal from a decision of the Board, this Court should make an independent review of the law and the facts. The courts have the inherent constitutional responsibility for defining and regulating the practice of law in the public interest. *Clark v. Austin*, 340 Mo. 467, 101 S.W.2d 977, 981–82 (banc 1937). The authority to determine the applicant's fitness to practice law is necessarily a function belonging to the judiciary. In addition, the duties of the Board include a mix of investigative and adjudicative responsibilities. The preferable course is for this Court to retain the plenary adjudicative

responsibility on appeal. Courts of other states in considering the question have reached a similar conclusion. *In the Matter of Ronwin*, 139 Ariz. 576, 680 P.2d 107, 110 (1983); *Application of Matthews*, 94 N.J. 59, 462 A.2d 165, 172 (1983).

The facts relied on in conducting a review are those found in the record and transcript of evidence presented by the parties at the hearing before the Board. Rule 8.12. The burden of demonstrating that he has met the requirements to take the bar examination is on the applicant. Rule 8.14.

Following Alexander's enrollment at the University of Missouri–Columbia School of Law, he filed an Application for Law Student Registration in November 1988. The application reflects that Alexander was born in 1939. He has been married and divorced on three occasions. In his application he was asked to state the grounds alleged for each divorce. He had no specific recollection of the grounds alleged in his pleadings. But he volunteered that the three marital breakups were the fault of his ex-wives, due to adultery by the first, leaving with another man by the second, and drug addiction by the third. He listed over twenty different employments after leaving high school. The longest was for five years.

The application disclosed three civil cases in which judgments were rendered against Alexander, the largest being a $23,000 default judgment in the United States district court at Peoria, Illinois, in 1981. He claims the default was the result of "misleading" information supplied by a court clerk. The application discloses a total of eleven civil lawsuits to which he has been a party since 1980. None of the eleven cases resulted in a judgment favorable to Alexander, although he claims some were "settled." The terms of the settlements were not disclosed. On separate occasions, he had been charged with assault, theft and tampering with a utility meter. Each charge was ultimately dismissed. Alexander was discharged in bankruptcy once in 1970 and again in 1982. The application asserts that

---

**1.** All references to rules are to Missouri Rules of Court, 1991 edition.

both were "forced," [2] the first due to his former wife's debts, the second due to the $23,000 default judgment. The application states, without specifying the dates or charges, that he had several minor traffic tickets during the past 32 years.

In a letter from the Secretary of the Board dated December 27, 1989, Alexander was advised that his application was denied because he failed to demonstrate that he possessed the fitness and reliability required of applicants for law student registration. He was also advised that if he had any disagreement with that action, he could ask for a hearing.

The request for hearing was found in a letter dated January 2, 1990. The letter begins:

Your letter to me dated December 27, 1989, provides additional evidence that you, the other members of the State Board of Law Examiners, the 13th Judicial Circuit Bar Committee, Evans & Dixon law firm, and certain judges within the Circuit Court of the City of St. Louis, St. Louis County Circuit Court, the Missouri Court of Appeals (Eastern District), and the Missouri Supreme Court have been and are presently engaged in a criminal conspiracy to deprive me of civil and fundamental rights ... because I have been openly critical of the corruption and judicial bias which exists within several Missouri and Illinois courts ... and because I have repeatedly attempted to exercise my rights....

Alexander's letter cites several examples of "corruption and judicial bias." He accuses a United States district court judge from Peoria, Illinois, of coercing a clerk into perjuring herself. He accuses an Illinois state attorney of knowingly presenting perjured testimony to a grand jury that resulted in criminal charges against Alexander. He accuses circuit judges and judges of the Missouri Court of Appeals, Eastern District, of permitting "surprise, unfair advantage and ... deceit" in a malicious prosecution action he had filed against Laclede Gas Company. He accuses attorneys of the law firm of Evans & Dixon

of filing false affidavits in regard to litigation Alexander had filed against A.A.I.M. Management Association, and in relation to said case, accuses the Missouri Court of Appeals, Eastern District, and the Missouri Supreme Court judges of approving of the "lies and treachery perpetrated by Evans & Dixon," as well as bias on the part of trial judges involved.

The applicant referred to the Board's letter dated December 27, 1989, as "nothing more than the pompous braying of a legal jackass in furtherance of the criminal conspiracy to oppress me for attempting to exercise my constitutional rights." The letter also contains declarations of Alexander's success in business, notwithstanding his humble beginnings and his intent to "help some of the poor and underprivileged get a fair and impartial trial." In the next to last paragraph of Alexander's prolix letter is the statement, "I hereby demand a hearing on this matter as set forth in said letter."

In the last paragraph of his letter, Alexander asserts "I hereby serve notice on all parties concerned as detailed above that I will immediately file appropriate charges with the United States Attorney General's office, and then I will sue in federal court each conspirator individually for actual and punitive damages."

Shortly thereafter, Alexander made good on his commitment to commence suit in federal court, naming, among other defendants, the members of the Board. Because of the litigation, this Court appointed Judge Edwards as surrogate for the Board to conduct further hearings, and an attorney to represent the surrogate in such proceedings.

Prior to any hearing, Alexander filed documents with the Board seeking answers to interrogatories, requests for admissions, and a motion for production of documents. The surrogate refused to respond. Alexander made no effort to obtain the information by requesting that subpoenas for persons, documents, papers or books be issued by the Court as provided in Rule 8.07. The

---

2. The bankruptcies were in fact voluntary proceedings.

only pleading addressed to the Court was a request to stay proceedings. That pleading was denied.

A hearing was conducted on May 17, 1990. Alexander represented himself. Other than his own statements, he offered no testimony regarding his moral character and fitness. By the time of the hearing, judgment had been entered dismissing Alexander's federal suit against the Board. Also, sanctions were imposed against Alexander totalling $16,400. His explanation for the unfavorable ruling was the district judge's alleged ambition to become a United States circuit judge. No evidence was offered in support of that supposition. Alexander claimed to be appealing the judgment.

Alexander also stated that he had filed three additional suits, not disclosed by his application. Those claims were against a medical insurance company. In those suits, he had accused various employees and officers of the insurance company of a conspiracy to commit a tortious breach of contract. By the date of the hearing, two of the suits had been dismissed and sanctions imposed against Alexander. He claimed to be appealing those judgments also.

When asked for facts supporting his claim that a federal judge in Peoria, Illinois, had ordered a clerk to commit the perjury that ultimately resulted in the $23,000 default judgment, Alexander replied that he had reached that conclusion because of the judge's hostile demeanor. He had no specific evidence on the point.

Alexander also was examined regarding his allegation of a criminal conspiracy among the judges in his case against A.A. I.M. Management Association. He claimed his evidence of criminal conspiracy was supported by the Missouri Court of Appeals' and the Supreme Court's summary denial of an unspecified extraordinary writ regarding an alleged violation of professional misconduct by counsel for A.A.I.M. He asserts that when faced with his allegations, all the trial and appellate judges involved in the case had no choice but to grant relief or join the conspiracy.

Although Alexander refused to sign a medical authorization, he admits he suffers from severe depression. The condition expresses itself by overall feelings of anger, hostility, inability to concentrate, loss of sleep and sexual impotency. He is taking various medications prescribed by a treating psychiatrist.

■ The purpose of Rule 8 is to exclude from the practice of law those persons possessing traits that are likely to result in injury to future clients, obstruction of the administration of justice, or a violation of the ethical standards established for members of the bar.

> [One] must possess good moral character to be admitted to the Bar and must qualify himself by the long preparation and study prescribed. He must demonstrate his qualifications by passing strict tests. To properly do his part as an officer of the court in the administration of justice, his conduct must conform to a high standard of ethics. Anything less than these standards may bring disrepute upon the legal profession, impair the standing of the courts and impede the administration of justice.

*Leimer v. Hulse*, 352 Mo. 451, 178 S.W.2d 335, 339 (1944).

■ On the record presented, the Court must decide whether Alexander has established by a preponderance of the evidence that he possesses the moral character and general fitness for registration as a law student in anticipation of taking the bar examination and becoming an attorney. Unfortunately, Alexander views this proceeding primarily as a vehicle by which he may advance his theories of conspiracy. Alexander's hostility to the legal system, the persistent threats of civil and criminal litigation and his unsupported accusations of wrongdoing against litigants, lawyers and judges in this and other proceedings to which he has been a party are not consistent with the ability to make reasoned judgments. That ability is essential to advising or representing others in legal matters.

Our Rules of Professional Conduct (R.P.C.) speak to misuse and abuse of the

legal process. "A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others." Rule 4, R.P.C. Preamble. "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, ..." Rule 4, R.P.C. 3.1. "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer...." Rule 4, R.P.C. 8.2(a). Based on his past conduct, there is little reason to suspect that Alexander is willing or able to conform to these ethical norms.

The divorces, bankruptcies, criminal charges, multiple employments, traffic convictions, emotional problems and participation in litigation may not, as individual incidents, be indicative that Alexander is unfit or of immoral character. However, the incidents are not examined in isolation, but in connection with each other and in connection with the unfounded charges of personal and professional impropriety against unpersuaded judges and opposing litigants and lawyers with whom Alexander has come into contact. Taken together, these incidents show that he is prone to turbulence, intemperance and irresponsibility. Those characteristics are not acceptable in one who would be a counselor and advocate in the legal system. In short, the record presented does not support Alexander's burden of proof.

In reaching this conclusion, the Court is not insensitive to the possibility that Alexander earnestly believes all of his accusations of conspiracy and improper motives. He is not the first person holding such beliefs that has applied for admission to a state bar. In *In the Matter of Ronwin,* *supra,* the applicant filed suit against various members of the Arizona state bar founded upon his belief that there was a widespread conspiracy to prevent his admission. The court denied his application to be a member of Arizona's bar. Much of what that court said is applicable here:

> In judicial proceedings, however, lawyers are required to show both accuracy and restraint; statements should not be made absent a basis in fact and law. We acknowledge, *arguendo,* that applicant believes he is the victim of a conspiracy which encompasses this court, most of the federal bench, the organized bar, the bar committees and the lawyers who have participated in the various cases. This is the recurring theme in the civil rights actions which Ronwin filed. We think, however, that Ronwin's sincere belief in this supposed, wide-ranging conspiracy against him is not all that is required for the practice of law. Belief unrelated to reason is a hallmark of fanaticism, zealotry or paranoia rather than reasoned advocacy. The practice of law requires the ability to discriminate between fact and faith, evidence and imagination, reality and hallucination. Further, epithets, verbal abuse, unfounded accusations and the like have no place in legal proceedings. While occasional lapses in decorum are usually overlooked, Ronwin's transgressions exceed occasional anger or loss of control. They form a pattern and a way of life which, on this record, appears to be the applicant's normal reaction to personal or professional adversity.

*Ronwin,* 680 P.2d at 115.

■ Alexander filed a brief but did not appear and make an announcement when the case was called for oral argument. His brief raises five points. The first two points complain of the surrogate's failure to respond to his attempts at discovery. The claims assume Alexander took proper steps to obtain discovery. Rule 8 does not incorporate the Rules of Civil Procedure relating to discovery. The authorized method for obtaining testimony and documentary evidence is to request subpoenas from this Court. Rule 8.07. That never occurred. No argument is made that the information sought in the interrogatories, motion to produce or request for admissions could not have been discovered by subpoena. Having failed to utilize the process for obtaining evidence as provided by Rule 8.07, Alexander has failed to establish

a denial of any fundamental right to obtain discovery.

Alexander's other three points attack the findings of the surrogate. Consistent with his approach in other legal proceedings, he repeatedly accuses the surrogate of bias and intentionally misquoting facts. As previously noted, the factual findings of the surrogate are not binding. This Court conducts an independent review of the record to determine if the applicant meets the requirements of Rule 8. The arguments attacking the surrogate's findings need not be addressed.

Alexander has failed to establish that he has the moral character and general fitness expected of one who would become a member of the Missouri Bar. Accordingly, the decision of the surrogate for the Board of Law Examiners denying his application for registration as a law student is affirmed.

BLACKMAR, C.J., ROBERTSON, RENDLEN, HIGGINS and COVINGTON, JJ., and ULRICH, Special Judge, concur.

BILLINGS, J., not sitting.